IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24–12228–A

---

EILEEN GONZALEZ and FRANK BENNAR, Individually,
and as parents and natural guardians of DEVIN BENNAR, a minor, and
ZABRYNA HERNANDEZ ACUNA, individually,

*Plaintiffs-Appellants*,

v.

GEICO GENERAL INSURANCE COMPANY,

*Defendant-Appellee.*

---
---

BRIEF OF PLAINTIFFS-APPELLANTS

---
---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

Stephen A. Marino, Jr.
Michal Meiler
VER PLOEG & MARINO, P.A.
100 S.E. Second St., Ste. 3300
Miami, Florida 33131
Telephone:  (305) 577-3996
Facsimile  (305) 577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com

Elliot B. Kula
William D. Mueller
KULA & ASSOCIATES, P.A.
12000 Biscayne Blvd., Ste. 221
Miami, Florida 33181
Telephone:  (305) 354-3858
Facsimile:  (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com
william@kulalegal.com

*Co-Counsel for Appellants*

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

## CERTIFICATE OF INTERESTED PERSONS

Plaintiffs-Appellants, Eileen Gonzalez and Frank Bennar, individually, and as parents and natural guardians of Devin Bennar, a minor, and Zabryna Hernandez Acuna, pursuant to Federal Rule of Appellate Procedure 26 and Eleventh Circuit Rule 26.1, file their Certificate of Interested Parties and Corporate Disclosure Statement and certifies that the following persons and entities have or may have an interest in the outcome of this case:

Acuna, Jesse

Acuna, Monika Caridad

Bennar, Devin

Bennar, Frank

Berkshire Hathaway, Inc.

Berlin, Graciana M., Esq.

Chiong, Luis O.

Dorta Law

Dorta, Gonzalo R., Esq.

Dorta, Matias R., Esq.

Duke, Adam, Esq.

C-1 of C-3

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

**CERTIFICATE OF INTERESTED PERSONS**

**AND**

**CORPORATE DISCLOSURE STATEMENT**

(Continued)

GEICO General Insurance Company

Gonzalez, Eileen

Government Employees Insurance Company

Hernandez Acuna, Zabryna

Kula & Associates, P.A.

Kula, Elliot B., Esq.

Layne, Paul J., Esq.

Marino, Jr., Stephen A., Esq.

Meiler, Michal, Esq.

Mueller, William D., Esq.

Silva & Silva, P.A.

Silva, Carlos E., Esq.

Torres, Edwin G., Hon.

Veliz, Derek L., Esq.

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

## CERTIFICATE OF INTERESTED PERSONS

## AND

## CORPORATE DISCLOSURE STATEMENT
(Continued)

Ver Ploeg & Marino, P.A.

Weldy, Richard A., Esq.

Williams, Kathleen M., Hon.

Young, Bill, Boles, Palmer, Duke & Thompson, P.A.

## CORPORATE DISCLOSURE STATEMENT

Upon information and belief, Appellee, GEICO General Insurance Company, is a wholly owned subsidiary of Government Employees Insurance Company, which is a wholly owned subsidiary of GEICO Corporation, which in turn is wholly owned by Berkshire Hathaway, Inc., a publicly traded company.

/s/ Elliot B. Kula

Elliot B. Kula

C-3 of C-3

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CITATIONS ............................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ vii

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF THE ISSUES......................................................................1

STATEMENT OF THE CASE.........................................................................2

    I.      COURSE OF PROCEEDINGS. ...............................................2

          A.      The Complaint....................................................2

          B.      The Breach of Contract was Adjudicate in the
                Insureds' Favor. ..................................................3

          C.      The Bad Faith Action..........................................4

    II.     STATEMENT OF THE FACTS........................................5

          A.      The Automobile Accident.....................................5

          B.      Claim on the Bennars' Policy. ...............................6

          C.      Claim on the Acuna Policy. ...................................6

          D.      GEICO Admitted Coverage *After* Suit is Filed
                Against its Insured. .............................................8

          E.      GEICO, Facing a Large Indemnification
                Judgment, Changed its Position................................10

    III.    STATEMENT OF THE STANDARD OF REVIEW.........................12

SUMMARY OF ARGUMENT .......................................................................13

i

# TABLE OF CONTENTS
(Continued)

**Page**

ARGUMENT ..................................................................................................15

I.    THE DISTRICT COURT ERRED RESOLVING THE
      ISSUE OF BAD FAITH AS A MATTER OF LAW..........................15

      A.    The Bad Faith Standard. ..........................................................15

      B.    Genuine Issue of Material Fact as to Whether
            GEICO Reasonably Complied with the
            Affirmative Duty to Initiate Settlement
            Negotiations When Significant Injuries Were
            Present. .....................................................................................18

      C.    The District Court Did Not Objectively Evaluate
            the Totality of the Circumstances When it
            Weighed the Plaintiffs' Evidence and Dismissed
            Expert Testimony on Summary Judgment...............................28

      D.    The District Court Erred by Comparing the
            Totality of These Circumstances to Inapposite
            Opinions While Ignoring Newer, More Similar,
            Binding Precedent. ..................................................................35

CONCLUSION ..............................................................................................42

# TABLE OF CITATIONS

**Page**

## *Cases*

*Aldana v. Progressive Am. Ins. Co.*,
828 Fed. Appx. 663 (11th Cir. 2020)............................................................ passim

*Am. Builders Ins. Co. v. S.-Owners Ins. Co.*,
71 F.4th 847 (11th Cir. 2023) ............................................................... 25, 26

Baldassini v. State Farm,
545 Fed. Appx. 842 (US App 11th Cir, 2013).................................................9, 11

*Bell v. Progressive Select Ins. Co.*,
No. 8:22-CV-1054-KKM-TGW, 2023 WL 5231159
(M.D. Fla. Aug. 15, 2023) ....................................................................................12

*Berges v. Infinity Ins. Co.*,
896 So. 2d 665 (Fla. 2004)...................................................................... 15, 16, 17

*Brink v. Direct Gen. Ins. Co.*,
38 F.4th 917 (11th Cir. 2022) ....................................................................... 24, 36

*Brink v. Direct Gen. Ins. Co.*,
No. 8:19-cv-2844-JSM-AEP, 2023 WL 4549545
(M.D. Fla. July 14, 2023)......................................................................................41

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................... 12, 30

*Childers v. Morgan Cnty. Bd. of Educ.*,
817 F.2d 1556 (11th Cir. 1987) ..........................................................................33

*Eres v. Progressive Am. Ins. Co.*,
998 F.3d 1273 (11th Cir. 2021) ...........................................................................25

*Farinas v. Florida Farm Bureau Gen. Ins. Co.*,
850 So. 2d 555 (Fla. 4th DCA 2003)...................................................................26

**TABLE OF CITATIONS**
(Continued)

**Page**

*Fid. & Cas. Co. of New York v. Cope*,
   462 So. 2d 459 (Fla. 1985)...............................................................................17

Fireman's Fund Ins. Cos. v. Pearl,
   540 So. 2d 883 (Fla. Dist. Ct. App. 4th Dist. 1989) ................................. 9, 11, 21

*Fridman v. Safeco Ins. Co. of Illinois*,
   185 So. 3d 1214 (Fla. 2016)..............................................................................17

*GEICO Gen. Ins. Co. v. Gonzalez*,
   No. 21-13304, 2022 WL 4545166 (11th Cir. Sept. 29, 2022)...................... passim

*GEICO Indem. Co. v. Boike*,
   No. 06- 80219-CIV, 2006 WL 8435402 (S.D. Fla. Oct. 16, 2006).....................26

*Hairston v. Gainesville Sun Pub. Co.*,
   9 F.3d 913 (11th Cir. 1993) ....................................................................... 30, 31

*Harvey v. GEICO Gen. Ins. Co.*,
   259 So. 3d 1 (Fla. 2018)............................................................................ passim

*Hinson v. Titan Ins. Co.*,
   656 Fed. Appx. 482 (11th Cir. 2016)..................................................................12

*Hudgens v. Bell Helicopters/Textron*,
   328 F.3d 1329 (11th Cir. 2003) .........................................................................12

*Ilias v. USAA Gen. Indem. Co.*,
   61 F.4th 1338 (11th Cir. 2023) ................................................................. passim

*In re Advanced Telecomm. Network, Inc.*,
   No. 618CV1186ORL28GJK, 2018 WL 4627669
   (M.D. Fla. Sept. 26, 2018) .................................................................................34

*In re Optical Techs., Inc.*,
   246 F.3d 1332 (11th Cir. 2001) .........................................................................12

iv

# TABLE OF CITATIONS
## (Continued)

**Page**

*King v. Gov't Emps. Ins. Co.*,
   No. 8:10-CV-977-T-30AEP, 2012 WL 4052271
   (M.D. Fla. Sept. 13, 2012) ................................................................................17

*Maglana v. Celebrity Cruises, Inc.*,
   No. 20-14206, 2022 WL 3134373 (11th Cir. Aug. 5, 2022) ..............................35

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...........................................................................................30

*McNamara v. Gov't Employees Ins. Co.*,
   30 F.4th 1055 (11th Cir. 2022) ..........................................................................35

*Mesa v. Clarendon Nat. Ins. Co.*,
   799 F.3d 1353 (11th Cir. 2015) ............................................................ 36, 37, 38

*Mize v. Jefferson City Bd. of Educ.*,
   93 F.3d 739 (11th Cir. 1996) ..............................................................................32

*Montanez v. Liberty Mut. Fire Ins. Co.*,
   824 Fed. Appx. 905 (11th Cir. 2020)..................................................................36

*Moore v. GEICO Gen. Ins. Co.*,
   633 Fed. Appx. 924 (11th Cir. 2016).............................................. 16, 28, 33, 34

*Pac. Employers Ins. Co. v. Wausau Bus. Ins. Co.*,
   508 F. Supp. 2d 1167 (M.D. Fla. 2007)..............................................................30

*Powell v. Prudential Prop. & Cas. Ins. Co.*,
   584 So. 2d 12 (Fla. 3d DCA 1991) ........................................................ 17, 19, 25

*Sears v. Roberts*,
   922 F.3d 1199 (11th Cir. 2019) ..........................................................................31

*Shuster v. S. Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Tr.*,
   591 So. 2d 174 (Fla. 1992)..................................................................................26

# TABLE OF CITATIONS
(Continued)

**Page**

*Stewart v. Booker T. Washington Ins.*,
  232 F.3d 844 (11th Cir. 2000) ...................................................... 30, 31

*Strickland v. Norfolk S. Ry. Co.*,
  692 F.3d 1151 (11th Cir. 2012) .............................................................33

*Turner v. Allstate Ins. Co.*,
  23-10187, 2023 WL 8667011 (11th Cir. Dec. 15, 2023) ...................................12

*Valle v. State Farm Mut. Auto. Ins. Co*,
  394 Fed. Appx. 555 (11th Cir. 2010)...............................................36

## *Statutes*

§ 624.155(1)(b)(1), Fla. Stat. (2024)...................................................15

§ 627.727(9), Fla. Stat. (2023) ...........................................................18

28 U.S.C. § 1291 (2025) ..................................................................1

28 U.S.C. § 1332 (2025) ..................................................................1

## *Rules*

11th Cir. R. 36–2.........................................................................35

Fed. R. Civ. P. 56 ................................................................. 29, 30, 31

Fed. R. Evid. 702 .......................................................................34

## STATEMENT REGARDING ORAL ARGUMENT

The facts of this case recur before the Court following its decision in *GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166 (11th Cir. Sept. 29, 2022) (unpublished) ("*Gonzalez I*"). At issue in *this* appeal is the summary adjudication of the Plaintiffs-Appellants' bad faith claim, which ripened after the Court's finding of liability in *Gonzalez I*. The District Court — following the report and recommendation of its Magistrate (who entered the underlying order in *Gonzalez I*) — summarily disposed of the bad faith claim against the insureds, finding that there was no view of the insurer's actions that a reasonable jury could conclude amounted to a bad faith failure to settle the Plaintiffs-Appellants' underlying liability claim. The insurer's actions, however, resulted in an excess judgment against its insured of $18 million rather than a timely settlement within the policy's limits. Oral argument on this question of whether the insurer's actions constitute bad faith will be beneficial.

## STATEMENT OF JURISDICTION

The district court properly exercised subject-matter jurisdiction over this case under 28 U.S.C. § 1332 (2025), because the parties are diverse and the amount in controversy exceeds the jurisdictional threshold.  And the case was properly before the Magistrate judge following the district court's referral.  DE:144.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 (2025), because this appeal arises from a final judgment of the district court.

## STATEMENT OF THE ISSUES

Whether the trial court may decide issues of fact and reject the claimant's expert's testimony to determine as a matter of law that the insurer did not fail to settle Bennar's claim when, under all the circumstances, it could and should have done so.

1

**STATEMENT OF THE CASE**

## I.    COURSE OF PROCEEDINGS.

### A.    The Complaint.

On April 11, 2020, GEICO General Insurance Company ("GEICO") filed a Complaint in the Southern District of Florida against Eileen Gonzalez and Frank Bennar, individually and as parents and natural guardians of Devin Bennar, a minor, (the "Bennars") Luis O. Chiong, individually, Zabryna Hernandez Acuna, individually, and Monika Caridad Acuna and Jesse Acuna. DE:1. GEICO's single-count complaint sought a declaration that it did not owe duties to defend or indemnify them based on losses they suffered in an accident that occurred on July 4, 2016. DE:1 at 8–9.[1]

GEICO alleged that it provided insurance coverage to Zabryna Hernandez Acuna and she was involved in an accident while operating a golf cart while covered by a GEICO insurance policy. DE:1 at 8. GEICO denied that it owed the insured a duty to indemnify, alleging that the type of vehicle that Acuna was driving did not qualify as an automobile under the policy, and asked the District Court for a declaration of its rights and obligations under the policy. DE:1 at 8–9. And GEICO requested a declaration that it was not obligated to provide coverage, or indemnification, to Acuna as a result of the accident.

---

[1] GEICO took this position after having told its insureds in writing that there was coverage for Bennar's claim and that the policy's limits would always be available (DE:141-13) and after defending its insureds and approving the $18 Million consent judgment negotiated by GEICO-appointed defense counsel. DE:141-25. *See* Statement of the Facts, *infra*.

On June 1, 2020, Defendants Gonzalez, Bennar, and Acuna filed their Answer, Affirmative Defenses, and Counterclaim refuting GEICO's application of the policy's provisions to the circumstances of the accident. DE:16. The Bennars indicated that they filed a claim against GEICO for the benefits in Acuna's policy and, following GEICO's refusal to settle that claim, filed a lawsuit in which the Bennars secured a $18,000,000 judgment against Acuna. DE:16 at 7. The Bennars alleged that GEICO breached the insurance contract "by refusing to settle the Bennars claim against [Zabryna Acuna] and by further refusing to indemnify her against the Final Judgment" entered in that preceding and underlying action. *See* DE:16 at 8.

## B.   The Breach of Contract was Adjudicate in the Insureds' Favor.

The District Court, on competing summary judgment motions and after referring the matter to the Magistrate Judge, granted GEICO's motion while denying the Bennars' motion. DE:76. The Bennars appealed. DE:89.

On September 29, 2022, in an unpublished opinion, this Court reversed the District Court's ruling, holding that the District Court "erred in determining that the golf cart did not qualify as a 'private passenger auto' as defined in the insurance policy and that the policy did not provide liability insurance coverage for the accident for that reason." DE:95 at 8–9. That is, this Court — relying on the same cases that GEICO internally cited prior to its failure to settle the claim (*compare* DE:95 *with* DE:141-12 at 2) determined that GEICO was liable for injuries caused by its insured through their operation of the golf cart.

3

On remand, the District Court entered Final Judgment against Geico on its complaint for declaratory relief (DE:1), and in the Bennars' favor on the breach of contract counterclaim (DE:16), while reserving jurisdiction on the Bennars' bad faith claim. DE:108. By entering Final Judgment on the Bennars' counterclaim, the District Court affirmatively found that GEICO breached its policy and caused damages to the Bennars because of that breach:

> 17. Breach: GEICO breached its duties under the Policy by refusing to settle the Bennars claim against Ms. Acuna and by further refusing to indemnify her against the Final Judgment.
>
> 18. Damages: As a direct, foreseeable, and proximate result of GEICO's breaches of its duties under the Policy, Ms. Acuna and the Bennars suffered and continue to suffer damages, including the amount of the Final Judgment and the attorney's fees and costs incurred by Ms. Acuna in the Underlying Action.

DE:16.

## C.  The Bad Faith Action.

The Bennars amended their counterclaim for bad faith against GEICO, and GEICO revised its defenses. DE:113; DE:156. *And see* DE:149 (striking two of GEICO's affirmative defenses). They maintained that "GEICO breached its fiduciary duties to [its insured] Ms. Acuna by failing to initiate settlement discussions and settle the Bennars' claim within the Policy limits when it could and should have done so, had it acted fairly and honestly and with due regard for their interests." DE:113, ¶25.

GEICO moved for summary judgment, arguing that as a matter of law its presuit actions could not be characterized as bad faith. DE:140; DE:141. GEICO

4

supported its motion with several exhibits, including the correspondence exchanged between the parties and the claim log by GEICO employees as they investigated the at-issue claims. DE:141. The Bennars responded, filing in response to GEICO's motion the affidavits of Eileen Gonzalez (Devin Bennar's mother) and Attorney Carlos Silva, and an expert report of Ronald Kammer, among other items. DE:152; DE:153.[2]

The motion was referred to the Magistrate Judge (as before), who again issued a report and recommendation in GEICO's favor.DE:144; DE:173.

The Bennars filed objections to the Magistrate's Report and Recommendations and GEICO responded accordingly. DE:176; DE:179.

The District Court affirmed and adopted the Magistrate's Report and Recommendations and denied as moot all other pending motions. DE:180. And thereon the District Court entered final judgment on behalf of GEICO. DE:181.

This appeal followed. DE:183.

## II.    STATEMENT OF THE FACTS.

### A.    The Automobile Accident.

On July 4, 2016, Zabryna Acuna, GEICO's insured under an automobile insurance policy with $10,000 per person and $20,000 per accident limits, was driving a golf cart and carried several passengers with her, including a minor, Devin Bennar. DE:113 at 2. While Acuna was driving the golf cart, she collided with a motor vehicle injuring everyone aboard the golf cart. DE:113 at 2. The accident

---

[2] The District Court's treatment of these affidavits and report plays a central role in this appeal.

resulted in catastrophic injuries to twelve-year-old Bennar who, because of the accident, suffered a traumatic brain injury and became confined to the use of a wheelchair and subject to feeding tubes.  DE:16 at 6; DE:51 at 9–10; DE:113 at 2.

### B.  Claim on the Bennars' Policy.

Bennar, through his parents, was insured under a GEICO automobile insurance policy.  DE:16 at 6; DE:113 at 3.  Within days of the accident, the Bennars reported a claim on their family policy which included a request for personal injury protection ("PIP") benefits.  DE:113 at 3; DE:176 at 2.  Accordingly, GEICO was notified of the Bennar children's injuries — specifically, their significant personal injuries — through this claim.  DE:113 at 3; DE:173 at 3.

On September 26, 2016, GEICO denied the claim on the Bennars' policy, asserting that the golf cart did not meet the definition of a "motor vehicle" under the Bennar policy which was a prerequisite to coverage.  DE:113 at 3; DE:173 at 3.

### C.  Claim on the Acuna Policy.

Eight months later, on March 3, 2017, the Bennars hired Carlos Silva, Esq., who sent GEICO a letter notifying it of his representation and making a statutory request for insurance information relating to the GEICO policy issued to the Acunas. DE:141-3; DE:173 at 2–3; DE:51 at 3.  Attorney Silva also called GEICO advising that Devin sustained a traumatic brain injury as a result of the accident on the same day.  DE:141 at 2; DE:141-4 at 7–8.

GEICO assigned claims examiner Sheri Delaney who "immediately" began investigating the claim, and quickly learned that Savannah and Isabella Bennar had

6

sustained bruising and soft tissue injuries — injuries far less grievous than those suffered by Devin Brennar.  DE:141 at 2; DE:141-4 at 7–8.

On March 22nd, GEICO issued a reservation of rights letter to Acuna, asserting that the golf cart "may not meet the definition of a non-owned auto" under its policy:

> We are making this reservation of rights because the 1987 EzGo Golf Cart involved in the loss does not appear to be a listed vehicle on your automobile policy and may not meet the definition of an "owned auto", "non-owned auto", or "temporary substitute auto" as well as your failure to cooperate with our investigation of the accident.

DE:141-5 at 2.  But GEICO stated it would continue to investigate whether to settle the "Bodily Injury claims."  DE:51 at 3; DE:141 at 3; DE:141-5.

In the subsequent days, GEICO, through Ms. Delaney and other employees, embarked on a protracted investigation into whether the golf cart met the definition of an "owned auto," "non-owned auto," or "temporary substitute auto,"  — issues that were irrelevant to the fundamental coverage question.  DE:141 at 3–5.  By March 30th, GEICO was still pursuing peripheral matters such as local registration requirements and driver's licensing status of the claimants.  *Id*.  GEICO involved supervisor Tina Swindell and manager Greg Santini, and they too focused on ancillary issues such as whether the golf cart had specific safety features or was electric versus gas-powered.  DE:141-4 at GLC 698-99.  Even after speaking with the golf cart's owner who confirmed these features, GEICO continued pursuing this investigation by sending field adjusters to seek photographs documenting these characteristics.  *Id*. at 677-78.  But, as the Court will see, these investigative pursuits unfolded as an exercise in futility.

7

**D.   GEICO Admitted Coverage *After* Suit is Filed Against its Insured.**

While GEICO engaged in its protracted investigation, both the Bennars and Attorney Silva testified that they would have accepted the $20,000 limit had it been offered during the course of the investigation:

<u>**Ms. Gonzalez (Devin's mother):**</u>

12. Had GEICO tendered the policy limits to my family in the first few weeks following my attorney's letter and before we filed suit at the end of April, I would have accepted those limits and settled Devin's claims against the Acunas.

DE:152-2 at 2.

<u>**Attorney Silva:**</u>

10. Any decision whether to settle a claim is ultimately made by my client. But had GEICO tendered the full policy limit to Devin Bennar in the weeks following our letter of representation, and before we filed our lawsuit at the end of April 2017, I would have recommended that our client accept the limits and provide a release of Devin Bennar's claim against the Acunas.

DE:152-3 at 3.

On April 27th, because GEICO had not engaged in settlement negotiations and had continued to issue reservation of rights letters in which it implied it would not extend coverage, the Bennars filed suit against Ms. Acuna in the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2017-010063-CA-Ol, for damages arising from the accident.  DE:113 at 3; DE:141 at 10.

After litigation commenced, GEICO determined it *would* extend bodily injury coverage to the Bennars.  DE:51 at 4; DE:141 at 7; DE:153 at 4.  On May 10th, two months after having received Attorney Silva's March 2017 letter, GEICO held a

8

"roundtable meeting" among the GEICO employees who had been "investigating" the features of the golf cart and they determined the golf cart was *not* covered. DE:173 at 4. The next day, after consulting with in-house counsel, GEICO reversed its decision and agreed to afford liability coverage. DE:141 at 7; DE:173 at 4. That is, within a single day and upon a single consult with its "home office attorney," GEICO undid its 60-plus day investigation and extended coverage for the Bennars claim. *Id*.

Accordingly, on May 12th, GEICO notified its outside counsel that it was extending coverage for the claim, acknowledging Florida precedent defining "auto" and drawing a distinction between "auto and "motor vehicle" as follows:

> We have conducted a coverage investigation regarding this auto policy 4207941529 issued to Monika Caridad Acuna and Jesse Acuna since the Ez-Go is not a listed vehicle on the policy. There is Bodily Injury coverage with $10,000 per person and $20,000 per occurrence. We have agreed to afford liability coverage in this matter since the word "auto" is not defined anywhere in our policy. Also we considered Fireman's Fund Ins. Cos. v. Pearl, 540 So. 2d 883 (Fla. Dist. Ct. App. 4th Dist. 1989) and Baldassini v. State Farm, 545 Fed. Appx. 842 (US App 11th Cir, 2013) in our decision making. However, there does not appear to be PIP coverage as FLPIP (07/15), Section II, Definition 9: defines a "motor vehicle" as a vehicle "both designed and required to be licensed for use on the highways of Florida". The golf cart was not designed to be used on the highways.

DE:141-12 at 2. GEICO then asked outside counsel to set up a "global settlement conference" to settle all claims for the $20,000 policy limits. *Id*; DE:173 at 4. Outside counsel wrote to GEICO's insureds that the policy limits were being made available and would "never be withdrawn" pursuant to the coverage determination. DE:141-13.

On June 12th, prior to the conference, Attorney Silva advised GEICO's counsel that neither he nor his clients would attend the conference, claiming GEICO had acted in bad faith due to the needless and protracted investigation. DE:173 at 5. Nevertheless, after the conference, GEICO delivered a $20,000 check to Silva's office. DE:173 at 5. Attorney Silva returned the check, calling it "defective" and "untimely." *Id.*[3]

The parties, with GEICO's consent, later stipulated to entry of a judgment ordering Ms. Acuna to pay Bennar $18,000,000.00 in compensatory damages. DE:51 at 5–6, 73, 75–76; DE:141 at 5; DE:141-25. And the Eleventh Judicial Circuit entered a final judgment based upon that stipulation. DE:141-25. Thereafter, Bennar entered into a settlement agreement with Acuna in which Acuna assigned her right, title, and interest in any cause of action she may have against GEICO related to the accident. DE:16 at 7; DE:153 at 6.

## E.   GEICO, Facing a Large Indemnification Judgment, Changed its Position.

Following entry of the $18 million judgment, GEICO reversed its coverage determination and retreated from its statement that coverage would "never be withdrawn," now once again asserting that the Bennars' claim was not covered under the terms of the policy, and filed the initial declaratory judgment action. DE:1.

---

[3] On August 7th, GEICO and Attorney Silva agreed to settle the claims of Savannah and Isabella Bennar for $5,000 each. DE:141 at 9–10. GEICO would continue, unsuccessfully, to try to settle Devin's claim for the remaining $10,000 bodily injury limits. DE:141-21, 141-22.

Following the District Court's initial summary judgment ruling in GEICO's favor, this Court reversed that ruling on appeal citing the same case law mentioned by GEICO's in-house counsel in its May 12th letter to the insureds — *Fireman's Fund Ins. Cos. v. Pearl*, 540 So. 2d 883 (Fla. 4th DCA 1989) and *Baldassini v. State Farm*, 545 Fed. Appx. 842 (11th Cir. 2013)—and drawing the same distinction between "auto" and "motor vehicle." *Compare* DE:141-12 at 2 *with GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *3–*4 (11th Cir. Sept. 29, 2022).

This bad faith action followed, based on the finding of coverage and GEICO's breach of its duties under the policy.

11

## III.    STATEMENT OF THE STANDARD OF REVIEW.

This Court reviews "the district court's grant of summary judgment de novo" — reviewing "the record anew, without deference to the district court" — and applying "the same legal standards as the trial court." *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333 (11th Cir. 2003); *Turner v. Allstate Ins. Co.*, 23-10187, 2023 WL 8667011, at *3 (11th Cir. Dec. 15, 2023).

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  But "the question of bad faith is, as a general matter, one reserved for the jury due to the flexible and expansive nature of the bad-faith inquiry." *Hinson v. Titan Ins. Co.*, 656 Fed. Appx. 482, 486 (11th Cir. 2016).  This why "[r]ecent decisions of the Eleventh Circuit emphasize that courts must be reticent to grant summary judgment in Florida bad-faith insurance cases." *Bell v. Progressive Select Ins. Co.*, No. 8:22-CV-1054-KKM-TGW, 2023 WL 5231159, at *6 (M.D. Fla. Aug. 15, 2023).

And so, "whatever else might be said about the state of Florida bad-faith insurance law, this much is clear: [GEICO] bears a heavy burden at the summary judgment stage." *Bell*, 2023 WL 5231159, at *6.

12

**SUMMARY OF ARGUMENT**

The District Court erred in granting summary judgment on the Plaintiffs' bad faith claim for three fundamental reasons.

First, GEICO's handling of the catastrophic injury claim was in breach of its duties under Florida's "totality of the circumstances" standard for assessing bad faith. The record demonstrates that GEICO conducted an unnecessary 69-day coverage investigation focused on irrelevant policy provisions, which was resolved in a single day once GEICO involved its in-house counsel. This delay caused the filing of a lawsuit resulting in an $18 million excess judgment against GEICO's insured. It was only until after the excess judgment was procured — with GEICO's consent — that GEICO reversed course again, resolving to fight coverage until this Court's *Gonzalez I* opinion resolved the issue. *GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166 (11th Cir. Sept. 29, 2022).

Second, GEICO breached its affirmative duty to initiate settlement negotiations in a case involving clear liability and catastrophic injuries. Under Florida's "ticking financial time bomb" doctrine, GEICO had an obligation to act with heightened urgency given the severity of the injuries and likelihood of an excess judgment. Despite early notice of Devin Bennar's traumatic brain injury, GEICO delayed meaningful settlement efforts and complicated resolution by insisting on an unnecessary global settlement conference rather than directly tendering the $10,000 per-person policy limit to a clearly catastrophically injured minor (Bennar).

Third, the District Court misapplied the summary judgment standard by: (1) improperly weighing evidence and making credibility determinations regarding

13

settlement affidavits; (2) completely disregarding expert testimony from a 40-year insurance defense lawyer and industry veteran that created genuine disputes of material fact regarding the reasonableness of GEICO's claims handling; and (3) erroneously relying on distinguishable unpublished opinions while ignoring controlling precedent, particularly *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338 (11th Cir. 2023) and *Aldana v. Progressive Am. Ins. Co.*, 828 Fed. Appx. 663 (11th Cir. 2020), which reversed summary judgment under analogous circumstances.

These errors, individually and collectively, demonstrate that genuine issues of material fact exist regarding whether GEICO failed to settle Bennar's claim when it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for their interests.  Given Florida's clear precedent that bad faith claims are jury questions due to their fact-intensive nature, summary judgment was inappropriate.  Reversal is warranted to allow a jury to evaluate the totality of the circumstances surrounding GEICO's claims handling.

## ARGUMENT

## I. THE DISTRICT COURT ERRED RESOLVING THE ISSUE OF BAD FAITH AS A MATTER OF LAW.

### A. The Bad Faith Standard.

Florida's bad faith standard is guided by the relevant language in section 624.155(1)(b)(1), Florida Statutes, that allows for the bringing of a bad faith claim against an insurer when the insurer fails to settle a claim when it could and should have done so.[4] That language is replicated in Florida's Bad Faith Jury Instruction, 404.4, which articulates a "prudent person" standard that must be applied in all cases where the bad faith allegation revolves around the insurer's failure to settle the insured's claim:

> Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his] [her] [its] [their] interests.

Fla. Stnd. Jury Instr. 404.4.

Florida caselaw articulates an objective totality of the circumstances test. In Florida, "the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) (citations omitted). That standard requires an assessment of each case's "own facts" and an application of the

---

[4] In diversity cases, this Court is *Erie*-bound to apply the substantive law of the forum state; here, Florida. *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1344 (11th Cir. 2023).

objective assessment of whether the insurer acted "in good faith with due regard for the interests of the insured." *Id*.

In *Harvey*, the Florida Supreme Court articulated the objective totality of the circumstances standard as that of a reasonably prudent person:

> Indeed, in *Boston Old Colony*, we stated in no uncertain terms that an insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. We explained that this duty obligated an insurer to exercise such control over the handling of the claim and make such decisions in good faith and with due regard for the interests of the insured. Additionally, not only is an insurer required to refrain from acting in its own interests in handling the claim, but it must also act with care and diligence. Thus, the Eleventh Circuit's contention that an insurer need not act prudently or even reasonably also misconstrues our well-established bad faith precedent.

*Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 8 (Fla. 2018) (internal citations omitted).

This Court has firmly stated that "the inherently flexible nature of the 'totality of the circumstances' standard renders a bad-faith claim unsuitable for summary disposition." *Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 928 (11th Cir. 2016) (citations omitted). Because "[e]ach case is determined on its own facts and ordinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury.'" *Berges*, 896 So. 2d at 680 (citation omitted).

Included in the flexible totality of the circumstances test is consideration of an insurer's fiduciary duty to act in good faith to protect its insured from excess judgments. Under Florida law, "if the injured third party or the insured is successful in establishing that the insurer breached the duty of good faith in handling the claim,

16

the plaintiff is entitled to recover the full extent of the damages to which the insured was exposed, including an excess judgment." *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1220 (Fla. 2016) (citations omitted).  That is, by all accounts, the very essence of a bad faith suit:

> The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits) — all of which results in the insured being exposed to an excess judgment.

*Fid. & Cas. Co. of New York v. Cope*, 462 So. 2d 459, 460 (Fla. 1985) (internal citations omitted).  Which is to say, in a bad faith suit, the insurer's actions are assessed to determine whether they "act[ed] in bad faith in failing to complete the settlement within the time deadlines, thereby insulating its insured from an excess judgment." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 679 (Fla. 2004).[5]

The insurer's duty to prevent the imposition of an excess judgment arises from the insurer's control over the defense and settlement of claims, which places the insured's financial interests in the insurer's hands.  *Cope*, 462 So. 2d at 460.  The duty requires the insurer to handle claims with "the same degree of care and diligence as a person of ordinary care and prudence should exercise in the

---

[5] Conversely, "an insurer's ultimate tender of the policy limits does not necessarily insulate it from liability by an insured's claim of bad faith" when the insured was exposed to an excess judgment despite the tender of limits.  *King v. Gov't Emps. Ins. Co.*, No. 8:10-CV-977-T-30AEP, 2012 WL 4052271, at *3 (M.D. Fla. Sept. 13, 2012) (citing *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 15 (Fla. 3d DCA 1991)).

17

management of his own business." *Harvey*, 259 So. 3d at 6. For that reason, a breach of this duty can render the insurer liable for damages exceeding the policy limits, including an excess judgment. *See* § 627.727(9), Fla. Stat. (2023) (stating that the damages an insured can recover in a bad faith action "shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state").

The District Court, after already entering Final Judgment on the Bennars' counterclaim that alleged that "GEICO breached its duties under the Policy by refusing to settle the Bennars claim against Ms. Acuna and by further refusing to indemnify her against the Final Judgment," and caused damages "including the amount of the Final Judgment and the attorney's fees and costs incurred by Ms. Acuna in the Underlying Action," erred by failing to recognize that the totality of the circumstances should have been weighed by a jury to decide whether GEICO's actions, which led its insured to face that $18 million excess judgment, were in breach of its duties to its insureds. DE:16.

### B. Genuine Issue of Material Fact as to Whether GEICO Reasonably Complied with the Affirmative Duty to Initiate Settlement Negotiations When Significant Injuries Were Present.

GEICO's duty of good faith in handling the claim was given heightened significance in a case involving clear liability and catastrophic injuries. That is, in a case "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement

negotiations" without waiting for a formal demand from the insured.  *Harvey*, 259 So. 3d at 7 (citing *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991) with approval).  This proactive obligation stems from courts' recognition that such cases present what the *Harvey* court termed a "ticking financial time bomb."  *Id*.  In these circumstances, even brief delays in attempting settlement may constitute evidence of bad faith.  *See Aldana v. Progressive Am. Ins. Co.*, 828 Fed. Appx. 663, 670 (11th Cir. 2020).

This duty exists independently of any formal settlement demand and operates even in the absence of any assurance that the claim can ultimately be settled.  *See Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1346 (11th Cir. 2023).

Considering the totality of the circumstances, GEICO breached its affirmative duty to initiate settlement negotiations by failing to act with the necessary urgency in the face of clear liability and catastrophic injuries.  The Magistrate, however, overlooked three critical details that fundamentally alter the analysis of the totality of the circumstances.  These elements provide a basis upon which a reasonable jury could find that GEICO acted in bad faith and serve as a basis for reversing the District Court's summary judgment order.

### (1) GEICO's Coverage Determination Was Immediately Reversed by In-House Legal Counsel.

First, as evidence of GEICO's *good* faith, the Magistrate cited GEICO's investigation of the claim made on Bennar's PIP policy and the amount of time — 69 days — that the investigation spanned prior to GEICO's general offer of the policy's minimal limits.  DE:173 at 17–18.  But the Magistrate misapprehended the

19

distinction between unnecessary investigative activity and the good faith investigation required when confronting catastrophic injuries. While GEICO was *active* during the 69-day period after receiving notice, the Magistrate confused motion with progress: GEICO's activity demonstrates the failure to act with the urgency required in catastrophic injury cases.

GEICO's "activity" was focused on a basis to deny coverage, not a means of protecting its insureds. Rather than promptly analyzing whether the golf cart qualified as a "non-owned auto" under the liability coverage of the insurance policy, GEICO spent months investigating irrelevant features about the cart's road-worthiness—a consideration only relevant to PIP coverage. DE:141-4 at GLC 674-675. From the outset, GEICO's investigation improperly focused on whether the golf cart met the definition of a "motor vehicle," a term specifically defined in the policy but inapplicable to bodily injury liability coverage. *See GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *3 (11th Cir. Sept. 29, 2022). That led GEICO to embark on a **69-day investigation** that was immediately undone in a **single day** by readily available advice from GEICO's in-house legal counsel. DE:141-12 at 2.

The summary judgment evidence demonstrates the futility of GEICO's investigation. During the 69-day period, GEICO's regional claim manager Greg Santini questioned whether the "golf cart may not qualify as a motor vehicle" and focused on whether "the golf cart was registered to be on the road." DE:141-4 at GLC 697-98. Manager Tina Swindell similarly fixated on irrelevant features, directing investigation into whether "it has headlights, taillights, signal lights, rear

20

view mirrors such that it can be considered an electric car." DE:141-4 at GLC 698-99. Even after speaking with the golf cart's owner who confirmed these features on March 30th, GEICO continued pursuing this misguided investigation by sending field adjusters to seek photographs documenting these irrelevant characteristics. DE:141-4 at GLC 677-78.

The wasteful nature of GEICO's investigation becomes starkly apparent when contrasted with what happened when GEICO finally consulted its in-house counsel on May 10, 2017. Within 24 hours, GEICO's legal counsel analyzed the correct issue — whether the golf cart qualified as a "non-owned auto" under the policy's liability coverage section — and concluded coverage existed based on straightforward Florida precedent like *Fireman's Fund Ins. Companies*, 540 So. 2d 883. DE:141-4; DE:141-12 at 2. The ease and speed with which coverage was confirmed when properly analyzed underscores the unnecessary delay caused by GEICO's misdirected investigation: Had GEICO involved its in-house legal department earlier in the process, the 69-day delay would have been avoided, the Bennars' lawsuit would not have been filed, and the Bennars would have accepted GEICO's tender of the policy limits. DE:152-2 at 2; DE:153-3 at 3.

GEICO's failure to promptly consult its available legal resources is particularly troubling. Despite having in-house attorneys available specifically for coverage analysis, GEICO's adjusters and supervisors, including the regional claims manager, waited over two months before seeking their guidance. DE:51 at 4; DE:141 at 7; DE:153 at 4; DE:173 at 4. And, when counsel finally reviewed the issue, they relied on the same cases — *Pearl* and *Baldassini* — that this Court would

21

later cite in confirming coverage was clearly required under Florida law. *Compare* DE:141-12 at 2 *with GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *3 (11th Cir. Sept. 29, 2022). GEICO's mishandling of the coverage investigation reflects the type of disregard for the insured's interests that Florida bad faith law prohibits.

The Magistrate failed to consider the outcome of GEICO's investigation and, specifically, GEICO's immediate about-face upon consulting with legal counsel. The Magistrate excused GEICO's delay, finding as reasonable that as "GEICO attempted to ascertain important details regarding the accident, its investigation was delayed by forces beyond its control such as the golf cart's presence in a police impound lot and the police's refusal to allow GEICO to inspect the golf cart absent the presence of a specific detective." DE:173 at 17–18. But the investigation itself was evidence not of a good faith attempt to settle the claim on behalf of GEICO's insured, but of an attempt to find a way to *deny* coverage. To put a finer point on it: Just because GEICO did *something* doesn't mean that a jury would automatically find that GEICO did the *right* thing.

### (2) The Severe Injuries Invoked The "Ticking Time Bomb" Doctrine.

Second, GEICO failed to act with appropriate urgency given the severity of Devin Bennar's injuries. "In such a case, where the financial exposure to the insured is a ticking financial time bomb and suit can be filed at any time, any delay in making an offer ... even where there [i]s no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." *Ilias v. USAA Gen. Indem. Co.*,

61 F.4th 1338, 1345 (11th Cir. 2023) (citing *Harvey*, 259 So. 3d at 7). Here, the severity of Devin's injuries set off the ticking financial time bomb and, viewing the totality of the circumstances, a reasonable jury could conclude that GEICO did not act with the requisite urgency given the impending detonation.

There is no disputing that GEICO knew within days of the accident that Devin had suffered catastrophic injuries, including brain damage and potential paralysis. DE:141-4 at GLC 684-686. *Compare with*, 61 F.4th at 1345 ("the record demonstrates that [the insurer] was aware of the grievous nature of [the insured's injuries]"). GEICO was first notified of the Bennar children's injuries when a claim was made on the Bennar's policy for personal injury protection benefits. DE:173 at 3; DE:176 at 2. The Magistrate observed that "the record is silent regarding when, if ever, GEICO connected the dots between the Acuna Policy and the Bennar Policy," yet acknowledged that "the denial of the PIP claim on the Bennar Policy factors into the totality of the circumstances analysis" to some degree. DE:173 at 3, 17. Which is to say, a reasonable jury could conclude that GEICO *should* have connected the dots between the two different claims and, at the very least, identified the injuries to the passengers as a common thread between the two.[6]

GEICO was then given immediate notice regarding Bennar's injuries when the claim was made on the Acuna policy. DE:173 at 2–3; DE:51 at 3; DE:141–3.

---

[6] The Magistrate viewed the activity in the PIP claim investigation as evidence in GEICO's favor. But in doing so, the Magistrate gave the reasonable inference to the wrong party. Had the Magistrate given the Bennars, the nonmoving party, the reasonable inference, it would have concluded that GEICO was aware of the crash and the losses well before Mr. Silva's letter but did nothing proactive during that time. That reasonable inference would have cut against GEICO's position.

Despite this definite knowledge, GEICO waited 68 days after opening the bodily injury claim before anyone analyzed whether the golf cart fit within the policy's definition of a non-owned auto under the liability coverage section. DE:141-4 at GLC 651. *And see* Argument I. B. (1), *supra*. GEICO's delay caused the filing of a lawsuit against its insured which resulted in the $18 million excess judgment.

The Magistrate's view of the circumstances placed emphasis on the wrong party's actions. *See* DE:16–18. The Magistrate focused on the Bennars' actions rather than on GEICO's actions, but the "focus [is] not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Ilias*, 61 F.4th at 1344 (citing *Berges*, 896 So. 2d at 677). As this Court has recently recognized, it is a well-established principle that "in Florida bad faith suits, the focus must remain on the actions of the insurer." *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 923 (11th Cir. 2022). The Magistrate failed to keep its focus on *GEICO's* behavior.

> Instead, the Magistrate's gaze was fixed on the Bennars and Attorney Silva:
>
> It is further undisputed that the Bennars never made a settlement demand for the $10,000.00 policy limits. And aside from the self-serving affidavits of Eileen Gonzalez and Attorney Silva, there is no evidence to suggest that the Bennars *ever* considered settling Devin's claim against the Acuna policy for that amount. Indeed, even when viewed in the light most favorable to the Bennars, the balance of the record suggests that $10,000.00 was far below what they would have been willing to accept.

24

DE:173 at 18.[7]

The caselaw is clear, however, that the more severe the injuries, the greater the urgency required in the *insurer's* response. *See*, *e.g.*, *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1279 (11th Cir. 2021) ("The day that Progressive learned of the accident, it concluded that it should offer the full bodily-injury policy limits to Eres and her son's estate."). The presence of such injuries demands *proactive* and expedited claims handling. *See Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 855 (11th Cir. 2023) (citing *Powell*, 584 So. 2d at 14) ("[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely," the insurer must "initiate settlement negotiations.") The fact that "the Bennars never made a settlement demand for the $10,000.00 policy limits" plays no role in excusing GEICO's failure to offer those limits — knowing full well that Devin Bennar had suffered severe injuries — before suit was filed. DE:173 at 18.

Under these circumstances, where Bennar's suit against Acuna could "be filed at any time" given the nature of Bennar's injuries which were "so serious that a judgment in excess of the policy limits [was] likely," GEICO had the affirmative duty to tender the full policy limits immediately. *Am. Builders Ins. Co.*, 71 F.4th at 855. "That body of evidence could lead a reasonable jury to conclude that [GEICO] delayed its investigation instead of attempting 'to resolve the coverage dispute

---

[7] And where GEICO never asked Mrs. Gonzales and Mr. Silva those questions in their depositions, affidavits are the only way to place their testimony on the record at the summary judgment stage. But there is absolutely no record evidence that contradicts the so-called "self-serving" affidavits. The Magistrate infers the witnesses' intent while ignoring their sworn testimony.

promptly' or using 'diligence and thoroughness.'" *Id*. at 856.  "And, in that delay, a jury could reasonably find that [GEICO] completely neglected its 'affirmative duty to initiate settlement negotiations,' … while [Bennar's] hospital bills climbed due to his traumatic injury." *Id*.

### (3) Geico's Insistence on A Global Settlement Conference Undermined Progress.

Third, after belatedly confirming coverage, GEICO impeded settlement by insisting on an unnecessary global settlement conference rather than directly tendering one of the $10,000/$20,000 liability limits to Devin.  GEICO included parties like Nancy Gonzalez and Luka Chiong who had made no claims, while knowing Devin's catastrophic injuries far exceeded the per-person limit.  This approach ignored Florida law permitting insurers to settle certain claims to the exclusion of others when reasonable.

In a multiple claimant situation, the question of whether an insurer's claims settlement strategy was reasonable is reserved for the jury.  *Farinas v. Florida Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 561 (Fla. 4th DCA 2003); *GEICO Indem. Co. v. Boike*, No. 06- 80219-CIV, 2006 WL 8435402, at *5-6 (S.D. Fla. Oct. 16, 2006).  Of course, when multiple claimants exist, an insurer has a duty to abstain from "indiscriminately settl[ing] with one or more of the parties for the full policy limits".  *Ilias*, 61 F.4th at 1346 (citing *Shuster v. S. Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Tr.*, 591 So. 2d 174, 177 (Fla. 1992)).  But where liability and damages so clearly favor one of the claimants, an insurer's insistence on grouping all the claims together can serve as the predicate for bad faith.  *See, e.g., Ilias*, 61 F.4th at 1346.

26

Here, as in *Ilias*, there is "[n]o evidence in the record suggests that a potential claim by [the other claimants] had any impact on [GEICO's] decision whether to settle with [Bennar]." *Ilias*, 61 F.4th at 1346.  GEICO's investigation confirmed through newspaper articles that while Devin suffered catastrophic injuries requiring hospitalization, the other children were "treated and released or not injured." DE:141-4 at GLC 684-686.  The record shows GEICO knew Nancy Gonzalez had already received benefits from her own insurer and that her insurer had tendered its limits to the Bennars.  DE:141-4 at GLC 375-376.  And a basic investigation would have confirmed Luka Chiong was not pursuing claims. Yet GEICO still specifically instructed its counsel (CSK) to include Chiong and Nancy Gonzalez in the global settlement conference rather than tendering the $10,000 per-person limit directly to Devin.  DE:153 at 4.

A reasonable jury could conclude that this approach served only GEICO's interests, not its insureds' interests.  By forcing all parties to attend a conference and "apportion the limits among themselves" before any checks could be issued (DE:44-3 at GLC 150-151), GEICO created unnecessary obstacles to settlement when it should have been working diligently to resolve Devin's claim — the one claim that clearly exposed its insureds to an excess judgment.  As the Florida Supreme Court emphasized in *Harvey*, "the critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." 259 So. 3d at 7. A reasonable jury could find that GEICO's insistence on an unnecessary global

27

conference, rather than directly tendering limits to settle the most serious claim, failed this test.

### C. The District Court Did Not Objectively Evaluate the Totality of the Circumstances When it Weighed the Plaintiffs' Evidence and Dismissed Expert Testimony on Summary Judgment.

Part of the reason that the Magistrate unilaterally decided that the totality of the circumstances should not be weighed by a jury was that it improperly dismissed evidence properly put before it by the Bennars on summary judgment.

First, the Magistrate usurped the jury's role by making impermissible credibility determinations regarding the Bennars' settlement evidence, dismissing sworn affidavits as "self-serving" rather than viewing them in the light most favorable to the non-moving party as required under Rule 56. Although the District Court sought to address this mistake in its order responding to Plaintiffs' objections to the report and recommendation, the error was so pervasive that it fundamentally tainted the report and could not be remedied.

Second, both the Magistrate and District Court failed to consider expert testimony from a 40-year insurance defense attorney and industry veteran that created genuine disputes regarding the reasonableness of GEICO's claims handling practices, investigation timeline, and settlement approach. The expert testimony was entirely disregarded: there was no mention of it whatsoever below. That, alone, is contrary to the summary judgment standard and requires remand for reconsideration. *See Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 930 (11th Cir. 2016) ("A district court] must consider *all evidence* in the record when reviewing a motion for

summary judgment ... and can only grant summary judgment if *everything in the record* demonstrates that no genuine issue of material fact exists") (citations omitted; emphasis in original); *Aldana v. Progressive Am. Ins. Co.*, 828 Fed. Appx. 663, 671 (11th Cir. 2020) ("The expert's testimony, which the district court did not address in its analysis, combined with the facts recounted above create a genuine issue of material fact as to whether [the insurer] diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment") (internal citations omitted).

Summary judgment is proper only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When either proving or disproving a material fact, Federal Rule 56(c) requires that a party — the proponent or opponent to the summary judgment motion — demonstrate where in the record there is evidence corroborating that fact or controverting that fact:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Once that is done, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party **opposing** the motion. *See*

29

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court has been clear that the district courts must avoid weighing conflicting evidence or making credibility determinations when considering a motion for summary judgment. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000); *see also Pac. Employers Ins. Co. v. Wausau Bus. Ins. Co.*, 508 F. Supp. 2d 1167, 1170 (M.D. Fla. 2007). In evaluating a motion for summary judgment under Rule 56(c), "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

In opposing summary judgment, the Plaintiffs complied with Fed. R. Civ. P. 56(c) by submitting affidavits of Eileen Gonzalez and Carlos Silva to show that the Bennars would have settled had GEICO timely tendered the policy limits for Devin Bennar's claim. DE:152-2, 152-3. Rather than view this evidence in light most favorable to the non-moving party as required, the Magistrate mischaracterized the affidavits as "self-serving", disregarding them and making impermissible credibility determinations reserved for the jury. DE:173 at 18 ("And aside from the self-serving affidavits of Eileen Gonzalez and Attorney Silva, there is no evidence to suggest that the Bennars ever considered settling Devin's claim against the Acuna policy for that amount."). The Report and Recommendation plainly underscores the Magistrate's error, as it concludes that "even when viewed in the light most favorable to the

30

Bennars, *the balance of the record suggests that $10,000.00 was far below what they would have been willing to accept.*"  *Id*. (emphasis added).

In reconciling the Report and Recommendation, the District Court refused to "agree that [the Magistrate's] description of the affidavits submitted by Plaintiffs as 'self-serving' was a credibility determination," but nevertheless made clear that it did "not adopt this characterization of the affidavits."  DE:180 at 1.  However, this clarification failed to resolve the underlying issue which led the Magistrate to conclude that the "balance of the record" should be resolved against the Bennars, although they were the nonmoving party.  Had the Magistrate accepted the affidavits of Eileen Gonzalez and Attorney Silva as true, it would be impossible for the Magistrate (and District Court) to conclude that the "balance of the record suggests that $10,000 was far below what they would have been willing to accept."  DE:173 at 18.  But the Magistrate did not do that, and thus impermissibly weighed the evidence in favor of GEICO and failed to evaluate the Bennars' evidence as required under Fed. R. Civ. P. 56.  *Stewart*, 232 F.3d at 848; *Hairston*, 9 F.3d at 918.

"While a jury ultimately may discredit [Ms. Gonzalez's] and [Attorney Silva's] testimony regarding the likelihood of settlement," the District Court's role "at summary judgment is not to make credibility determinations or weigh the evidence."  *Aldana v. Progressive Am. Ins. Co.*, 828 Fed. Appx. 663, 672 (11th Cir. 2020).  Both the Magistrate and District Court ran afoul of that elemental summary judgment principle. *See Sears v. Roberts*, 922 F.3d 1199, 1208–09 (11th Cir. 2019) (explaining the very narrow circumstances in which a court can disregard a party's testimony as "blatantly contradicted by the record," such as when "a

31

videotape of the incident definitively established what happened and what did not");
*Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("[i]t is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment.")

The Bennars submitted an expert report from Ronald Kammer, an attorney with over 40 years of experience in insurance coverage disputes, detailing how GEICO's delayed resolution of the coverage issue violated its good faith obligations. DE:153-5.  Kammer's report identified genuine disputes of material fact regarding the reasonableness of GEICO's investigation, GEICO's attempts to resolve the claim, and the reasonableness of the of the need to file a coverage action.  *Id*. Applying Florida's bad faith standards, Kammer opined that GEICO's two-month investigation was untimely given the severity of the loss and explained that proper claims handling should have resolved the coverage question immediately by applying the definition of "non-owned auto" and consulting counsel.  DE:135-5 at 8–10.

While the Magistrate was not bound by the expert's opinion, it erred by failing to give any weight to Kammer's testimony and by disregarding the expert evidence as proof that reasonable individuals could differ on their view of the totality of the circumstances.  The expert's opinion is not mentioned once in the Magistrate's Report and Recommendation, nor in the District Court's order adopting the same. DE:173; DE:180.  The Magistrate's failure to consider this evidence constitutes a significant error, as credibility determinations and the resolution of conflicting evidence are exclusively the province of the jury.

32

This Court has recognized that expert opinions, combined with factual evidence supportive of those opinions, preclude summary judgment. In *Moore*, 633 Fed. Appx. 924, an insured "opposed GEICO's motion for summary judgment in part by submitting expert testimony that evaluated GEICO's conduct in this case" and determined that it deviated from industry standards. *Id*. at 930. In entering summary judgment on GEICO's behalf, the district court (as the court here did) "made no mention whatsoever of the expert's testimony or the expert's ultimate conclusion." *Id*. The Court reasoned that through its omission the district court "either (1) ignored the testimony altogether, or (2) implicitly determined that the testimony was not credible." *Id*. "In either case," this Court concluded, "the [district] court erred." *Id*. (citing *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012), for the proposition that a district court "must consider *all evidence* in the record when reviewing a motion for summary judgment ... and can only grant summary judgment if *everything in the record* demonstrates that no genuine issue of material fact exists").

This Court has recognized that expert testimony can, in some cases, create a "genuine dispute of material fact." *Id.* at 931. This is especially true when the expert's opinion illuminates industry standards, providing courts with a basis to evaluate the facts of the case while avoiding reliance on their "inexpert intuition." *Childers v. Morgan Cnty. Bd. of Educ.*, 817 F.2d 1556, 1559 (11th Cir. 1987).

The same situation arose in *Aldana*, 828 Fed. Appx. at 671, where again a district court "did not address" expert testimony that shed light on an insurer's actions and held them up against a standard benchmark for good faith insurance

33

conduct. In that case, the Court again concluded that the "[t]he expert's testimony, which the district court did not address in its analysis, combined with the facts recounted above create a genuine issue of material fact as to whether [the insurer] "diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Id*. at 671–672 (citing *Harvey*, 259 So. 3d at 7).

Krammer's expert opinion was disregarded without comment. At the very least, because this Court is "unable to evaluate whether the expert testimony raised a genuine dispute of material fact because the district court omitted from its opinion any reference whatsoever to that testimony," the Court should have the district court "accordingly evaluate the testimony under the usual standards for admissibility, *see* Fed. R. Evid. 702, and decide what relevance, if any, the testimony has to the creation of a genuine dispute of material fact. The [district] court should not simply ignore the testimony or deem the expert not credible." *Moore*, 633 Fed. Appx. at 931. *And see e.g., In re Advanced Telecomm. Network, Inc*., No. 618CV1186ORL28GJK, 2018 WL 4627669, at *4 (M.D. Fla. Sept. 26, 2018) ("It is settled law in the Eleventh Circuit that an expert report can be used to create a genuine issue of material fact that precludes summary judgment…. While a party may challenge the admissibility of an expert's report in accordance with the evidence rules, it may not, on a motion for summary judgment, ask a court to evaluate the expert's credibility or ignore the expert's evidence altogether.")

34

**D. The District Court Erred by Comparing the Totality of These Circumstances to Inapposite Opinions While Ignoring Newer, More Similar, Binding Precedent.**

Lastly, the District Court — by adopting the Magistrate's Report and Recommendation — erred by comparing the totality of the circumstances in this case to those commented on by this Court in several unpublished opinions, while ignoring newer and more similar circumstances in published opinions. This Court's 11th Cir. R. 36–2 plainly states that "[u]npublished opinions are not considered binding precedent," although "they may be cited as persuasive authority." Nevertheless, the Magistrate elevated unpublished opinions over published ones in determining that no reasonable jury could find bad faith under these circumstances. That, too, was error.

Recently, in *McNamara v. Gov't Employees Ins. Co.*, 30 F.4th 1055 (11th Cir. 2022), the Court reaffirmed that while "unpublished opinions may be cited as persuasive authority, they are not considered binding precedent." *Id*. at 1060 (citations omitted). The Court stressed that it has made that "elemental point … again and again, but it bears repeating." *Id*. Accordingly, "a district court shouldn't simply cite to one of [the Eleventh Circuit's] unpublished opinions as the basis for its decision without separately determining that it is persuasive." *Id*. at 1061. *See accord Maglana v. Celebrity Cruises, Inc.*, No. 20-14206, 2022 WL 3134373, at *5 (11th Cir. Aug. 5, 2022) (unpublished).

Here, the Magistrate extensively relied on two unpublished decisions and inaccurately compared the circumstances to a third, published decision. Over the

35

last few years, the Court has issued much more relevant published decisions that were ignored by the Magistrate but that should have controlled the decision.

First, the Magistrate relied on the unpublished decisions in *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 Fed. Appx. 905 (11th Cir. 2020) and *Valle v. State Farm Mut. Auto. Ins. Co*, 394 Fed. Appx. 555 (11th Cir. 2010) as examples of circumstances that disproved GEICO acted in bad faith. Both *Montanez* and *Valle* improperly place emphasis on the claimant's actions and proposal for settlements, as opposed to the insurer's actions, as required by *published* opinions of this Court. *See Ilias*, 61 F.4th at 1344; *Brink*, 38 F.4th at 923. Those decisions largely excuse an insurer's conduct based on the conduct of the claimant. *Montanez*, 824 Fed. Appx. at 911–912 ("given the lack of communication from Plaintiff, we see no evidence in the record suggesting that Defendant knew it was exposing its insured to excess liability"); *Valle*, 394 Fed. Appx. at 557 ("Valle made neither a formal settlement demand to State Farm nor indicated in any way a unique urgency in the resolution of her claim.") Neither feature a situation "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely," thus triggering an insurer's "affirmative duty to initiate settlement negotiations" without waiting for a formal demand from the insured present here. *Harvey*, 259 So. 3d at 7

Second, the Magistrate relied on *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353 (11th Cir. 2015), which was published but still featured materially different circumstances than those here. In *Mesa*, within four days of receiving notice, the insurer hired a third-party administrator to investigate and shortly thereafter retained counsel to coordinate potential settlements. *Id*. at 1359. There was no coverage

36

dispute or delay; the insurer focused immediately on claims resolution. *Id*. at 1359–1360. Moreover, the insurer faced genuine uncertainty about multiple competing claims of unclear relative severity, making a global settlement approach reasonable and appropriate under the circumstances. *Id*.

In stark contrast, GEICO's handling of the golf cart accident claim reveals a pattern of delay and misdirected investigation (designed to benefit GEICO) that directly led to losing a viable settlement opportunity. GEICO had early notice of the accident through the Bennars PIP claim but failed or refused to connect this to potential liability under the Acuna policy. Even after receiving formal notice in March 2017, GEICO spent nearly 70 days investigating a basis to disclaim coverage by focusing on irrelevant factors like whether the golf cart was "road-worthy" — an analysis that pertained to PIP coverage rather than liability coverage. The coverage determination that ultimately led to accepting the claim could have been completed immediately by analyzing the policy language regarding non-owned autos, as GEICO's in-house counsel later demonstrated.

The causal connection between the insurer's conduct and the excess judgment is also a critical distinction. In *Mesa*, the court determined that any failure to communicate with the insured did not contribute to the excess judgment because no reasonable settlement opportunity was missed. *Mesa*, 799 F.3d at 1360. Here, GEICO's delayed coverage determination and unwarranted insistence on a global settlement process directly resulted in the loss of a clear opportunity to settle Devin's claim within policy limits. Affidavits submitted in this case confirm that the Bennars

37

would have accepted a prompt tender of the $10,000 limit, underscoring the direct causal link between GEICO's mishandling of the claim and the excess judgment.

The summary judgment in *Mesa* was affirmed because the insurer acted reasonably in pursuing global settlement given genuine uncertainty about multiple claims. This is not that case. GEICO's conduct here presents the opposite scenario: an insurer that delayed making an obvious coverage determination, focused on irrelevant factors in its investigation, and then insisted on an unnecessary global settlement process despite knowing Devin's claim was catastrophic and the primary claim at issue. These delays and missteps directly caused the loss of a settlement opportunity that the evidence shows would have succeeded. Given these material distinctions, *Mesa* — the one published case relied on heavily by the Magistrate — does not support granting summary judgment to GEICO.

The Magistrate also mischaracterized this case as involving multiple claimants to align it with *Mesa*, *Montanez*, and *Valle*. But this case is not a true multi-claimant scenario: it was clear from the outset that Devin's injuries were catastrophic and far more severe than any other potential claims. Devin's siblings settled their claims under a single policy limit, and Devin's significantly more severe injuries warranted a distinct settlement approach. DE:153 at Ex. F. The evidence showed that other potential claimants like Nancy Gonzalez and Luka Chiong were not pursuing claims. Despite this clarity, GEICO robotically insisted on an unnecessary global settlement process rather than tendering the $10,000 per-person limit directly to Devin.

This Court's recent decision in *Ilias*, 61 F.4th 1338, which is published and was argued to the Magistrate (DE:153 at 13), should have been followed. In *Ilias*, the insurer, like GEICO in this case, unreasonably delayed initiating settlement negotiations despite clear liability and grievous injuries that indicated a likelihood of an excess judgment. *Id*. at 1340–41. The Court reversed the summary judgment, finding that the insurer's delay in tendering the policy limits by even just a month, and the insurer's failure to provide critical information to the claimant's attorney, created genuine issues of material fact regarding bad faith. *Id*. at 1342–46.

Similarly, GEICO delayed meaningful settlement efforts and engaged in protracted investigations into irrelevant issues,  despite knowing the catastrophic nature of Devin Bennar's injuries and the high probability of an excess judgment. DE:141 at 3–5.  GEICO's reservation of rights letters and equivocal coverage position further exacerbated a delay that lasted longer than the delay cited in *Ilias*. And as in *Ilias*, these delays and failures to act promptly on behalf of the insured compel the conclusion that genuine issues of material fact preclude summary judgment.

The *Ilias* decision also reflected two "well-established" tenets overlooked by the Magistrate here. 61 F.4th at 1346. First, *Ilias* reaffirmed this Court's instruction that in "Florida bad faith suits, the focus must remain on the actions of the insurer." 61 F.4th at 1346 (citations omitted). In *Ilias*, as the Magistrate here did, the summary judgment focused on the actions of the insured; namely, that the insured "failed to respond to some but by no means all of [the insurer's] calls." *Id*. And second, *Ilias* rejected a similar proposition made by GEICO here that the existence of multiple

claimants excused the delay in settlement. *Id*. Both propositions should have featured in the Magistrate's analysis below but were omitted by the failure to account for *Ilias*.

Had the Magistrate wanted to keep its focus on unpublished opinions, it should have taken into account *Aldana*, 828 Fed. Appx. at 663, which presents a far more similar set of circumstances than *Mesa*, *Montanez*, and *Valle*. In *Aldana,* the insurer unreasonably delayed the handling and settlement of the claim and used a one-size-fits-all global settlement conference instead of individually evaluating the claims and using reasoned claims judgment. *Id*. at 671–673. The Court reversed the summary judgment, finding that the insurer's insistence on a settlement conference did not insulate it from bad faith because the insurer reasonably knew that the global settlement would be unsatisfactory to the claimants who suffered the most severe injuries. *Id*. Similarly, GEICO pursued a global settlement approach despite knowing that Devin's injuries far exceeded the policy limits and other potential claimants had minor or no injuries, and continued to do so even after Mr. Silva advised that he would not be attending the conference.

The *Aldana* court relied heavily on expert testimony criticizing the insurer's claims handling approach in finding triable issues of fact. 828 Fed. Appx. at 671. Here, Mr. Kammer's expert testimony — completely ignored by the District Court — presents even more specific criticisms of GEICO's handling, including their failure to properly analyze the coverage issue, delay in consulting coverage counsel on straightforward policy interpretation, and insistence on global settlement despite knowing other parties had minimal or no claims. DE:152–3. Just as the

40

Court found the *Aldana* insurer's conduct created jury questions about bad faith, GEICO's more egregious delays and less justifiable settlement approach present even stronger grounds for reversing the summary judgment.

The parallels to *Ilias* and *Aldana*, combined with GEICO's more problematic claims handling, compel submission of the bad faith question to a jury. *And see Brink v. Direct Gen. Ins. Co.*, No. 8:19-cv-2844-JSM-AEP, 2023 WL 4549545, *3 (M.D. Fla. July 14, 2023) (noting that in *Aldana*, the Court reversed the district court's order granting summary judgment in favor of the insurer, "despite undisputed evidence that: (1) the claimant's attorney never responded to the insurer's repeated requests to schedule a global settlement conference; (2) the insurer followed up no less than five times with its insureds to retrieve requested financial affidavits; (3) the insurer sent eight (largely unanswered) letters to the claimant's attorney offering to globally tender the insureds' policy limits; and (4) the claimants never offered to settle their claims within the insureds' limits nor expressed a desire to do so").

41

**CONCLUSION**

Appellants respectfully request that the Court reverse the District Court's Order Adopting the Magistrate's Report and Recommendation which granted summary judgment in favor of GEICO, and remand for further proceedings.

Respectfully submitted,

Stephen A. Marino, Jr.
  Florida Bar No. 79170
Michal Meiler
  Florida Bar No. 86522
VER PLOEG & MARINO, P.A.
100 S.E. Second St., Ste. 3300
Miami, Florida 33131
Telephone:  (305) 577-3996
Facsimile:  (305) 577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com

Elliot B. Kula
  Florida Bar No. 003794
William D. Mueller
  Florida Bar No. 120124
KULA & ASSOCIATES, P.A.
11900 Biscayne Boulevard, Suite 310
Miami, Florida 33181
Telephone:  (305) 354-3858
eservice@kulalegal.com
elliot@kulalegal.com
william@kulalegal.com

By: /s/ Stephen A. Marino, Jr.
     Stephen A. Marino, Jr.

By: /s/ Elliot B. Kula
     Elliot B. Kula

By: /s/ Michal Meiler
     Michal Meiler

By: /s/ William D. Mueller
     William D. Mueller

*Co-Counsel for Appellants*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses Times New Roman 14-point typeface and contains   10,798   words.

/s/ Stephen A. Marino, Jr.
Stephen A. Marino, Jr.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Stephen A. Marino, Jr
Stephen A. Marino, Jr.

43