IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.: 24-12228

_____

EILEEN GONZALEZ and FRANK BENNAR,
individually, and as parents and natural guardians of
DEVIN BENNAR, a minor, and
ZABRYNA HERNANDEZ ACUNA,

*Plaintiffs-Appellants*,

v.

GEICO GENERAL INSURANCE COMPANY,

*Defendant-Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
L.T. NUMBER **1:20-cv-21549-KMW**

**APPELLEE'S ANSWER BRIEF ON APPEAL**

<div style="margin-left:40%">

Adam A. Duke
Richard A. Weldy
Young, Bill, Boles, Palmer, Duke
& Thompson, P.A.
One Biscayne Tower, Suite 3195
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 222-7720 - telephone
(305) 492-7729 – fax
aduke@flalawyer.net
rweldy@flalawyer.net
*Attorneys for Appellee*

</div>

## <u>APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 28(b), 11th Cir. R. 26.1-1 through 26.1-4, and 11th Cir. R. 28-1(b), the undersigned attorney for Appellee certifies that the following is a list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the above case, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Acuna, Jesse

2.    Acuna, Monika Caridad

3.    Bennar, Devin

4.    Bennar, Frank

5.    Berkshire Hathaway, Inc. (NYSE: BRK.A; NYSE: BRK.B)

6.    Chiong, Luis O.

7.    Dorta Law

8.    Dorta, Gonzalo R.

9.    Dorta, Matias R.

10.    Duke, Adam A.

11.    GEICO Corporation (Parent Company)

12. GEICO General Insurance Company

13. GEICO Indemnity Company

14. Gonzalez, Eileen

15. Government Employees Insurance Company

16. Hernandez Acuna, Zabryna

17. Kula, Elliot B.

18. Kula & Associates, P.A.

19. Marino, Stephen A.

20. Meiler, Michal

21. Mueller, William D.

22. Silva & Silva, P.A.

23. Silva, Carlos E.

24. Torres, Edwin, G. The Honorable United States Magistrate Judge, Southern District of Florida

25. Ver Ploeg & Marino, P.A.

26. Williams, Kathleen M., The Honorable United States District Court Judge, Southern District of Florida

27. Weldy, Richard A.

28. Young, Bill, Boles, Palmer, Duke & Thompson, P.A.

## CORPORATE DISCLOSURE STATEMENT

Appellee, GEICO GENERAL INSURANCE COMPANY ("GEICO"), is an indirect, wholly-owned subsidiary of the Berkshire Hathaway, Inc. which is publicly traded on the NYSE under the symbol BRK-A and BRK-B.

GEICO discloses the following parent corporations and all publicly held corporations owning 10% or more of its stock as follows:

a.    GEICO Corporation (parent company);

b.    Berkshire Hathaway, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unnecessary to the resolution of the issues raised on appeal in this matter.

# **TABLE OF CONTENTS**

TABLE OF CITATIONS .................................................................................... iii

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE.............................................................................2

1.    Course of proceedings and disposition in the court below. ...........................2

2.    Statement of the facts. ...................................................................................3

3.    Standard of review.......................................................................................16

SUMMARY OF THE ARGUMENT ..................................................................16

ARGUMENT .......................................................................................................18

I.    THE DISTRICT COURT APPROPRIATELY GRANTED SUMMARY
JUDGMENT IN FAVOR OF GEICO.................................................................18

A.    The District Court Correctly Followed Florida Law and Bad Faith Precedent
from this Court in Granting Summary Judgment. ................................................18

B.    GEICO Fulfilled its Duties Under *Powell* and *Farinas* by Globally Tendering
the Policy Limits Upon Completion of its Coverage Investigation........................25

    i.    GEICO fulfilled its duty under *Powell* by promptly initiating settlement
    negotiations after concluding its coverage investigation. ...............................25

    ii.    GEICO's efforts to schedule and conduct a global settlement conference
    were consistent with its good faith duties under *Farinas*................................26

C.    There is No Genuine Dispute as to Any Material Fact with Respect to the
Necessity and Extent of GEICO's Coverage Investigation....................................29

D.    GEICO Cannot be Found to Have Acted in Bad Faith as a Matter of Law
Where it was Deprived of a Reasonable Opportunity to Settle..............................35

E.    Appellants Rely on Case Law that is Either Inapplicable or Supports
GEICO's Position. ................................................................................................41

i

II.    THE TRIAL COURT CONSIDERED ALL RELEVANT AND ADMISSIBLE RECORD EVIDENCE IN GRANTING SUMMARY JUDGMENT 45

A.    The District Court Fully Considered Appellants' Affidavits and Reviewed the Pertinent Portions of the Record *De Novo*........................................................45

B.    Appellants' Expert Report is Hearsay and Cannot Create Genuine Issues of Material Fact. .....................................................................................................48

CONCLUSION...............................................................................................52

CERTIFICATE OF SERVICE .......................................................................55

CERTIFICATE OF COMPLIANCE...............................................................57

## TABLE OF CITATIONS

**Cases**

*Aldana v. Progressive Am. Ins. Co.*, 828 F. App'x 663 (11th Cir. 2020) ... 44, 45, 49

*Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 857 (11th Cir. 2023) ..43

*Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985).............51

*Arch Specialty Ins. Co. v. BP Inv. Partners, LLC,* No. 618CV1149ORL78DCI, 2020 WL 5848317, at *5, n.1 (M.D. Fla. Oct. 1, 2020) ......................................49

*Barnard v. GEICO Gen. Ins. Co.*, 448 Fed.Appx. 940, 943-44 (11th Cir. 2011) ...36

*Barry v. GEICO Gen. Ins. Co.*, 938 So. 2d 613, 618 (Fla. 4th DCA 2006)..... 25, 40

*Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)......... 30, 47

*Bridges v. United States of America,* 2017 WL 3764244 (M.D. Fla. 2017) ...........50

*Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 925 (11th Cir. 2022).........................43

*Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015) ........16

*Deary v. Progressive Am. Ins. Co.*, 536 F.Supp.3d 1258, 1266 (S.D. Fla. 2021), *aff'd*, No. 21-11878, 2022 WL 2916358 (11th Cir. July 25, 2022) ............... 36, 40

*DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. 4th DCA 1975)........25

*Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F.Supp.3d 1143 (M.D. Fla. 2019)...49

*Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1279 (11th Cir. 2021)........ 43, 51

*Evers v. Gen. Motors Corp.*, 770 F.2d 984, 985 (11th Cir. 1985)..........................50

*Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So.2d 555, 560 (Fla. 4th DCA 2003) ........................................................................................................... 27, 29

*GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *1 (11th Cir. Sept. 29, 2022).......................................................................................2, 32

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) ...................................16

*Hayas v. GEICO Gen. Ins. Co.*, 2014 WL 6883131 (M.D. Fla. 2014) ...................36

*Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1340 (11th Cir. 2023)............ 41, 42

*Johnston v. Borders*, No. 615CV936ORL40DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018)................................................................................................48

*Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008), *aff'd*, 342 F. App'x 485 (11th Cir. 2009) ........................................... 30, 47

*Martin v. Nationwide Mut. Fire Ins. Co.*, 235 So. 2d 14, 16 (Fla. 2d DCA 1970) .31

*Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353 (11th Cir. 2015) 19, 22, 23, 27, 29, 43

*Montanez v. Liberty Mut. Fire Ins. Co.*, 478 F.Supp.3d 1242, 1248 (S.D. Fla. 2019) ................................................................................................................ 19, 26

*Moore v. GEICO Gen. Ins. Co.*, 633 F.App'x 924 (11th Cir. 2016) ........................49

*Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991) .............................................................................................................................25

*RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095 (Fla. 4th DCA 1997) ............36

*Weiss v. Standard Ins. Co.*, 672 F.Supp.2d 1313 (S.D. Fla. 2009) ................... 51, 52

**Rules**

Fed. R. Evid. 802 ...................................................................................................49

## JURISDICTIONAL STATEMENT

The district court below properly exercised subject matter jurisdiction over the case pursuant to 28 U.S.C. § 2201, § 1332 because the parties in the action are diverse and the amount in controversy exceeds the jurisdictional threshold. GEICO is a citizen of Nebraska and Maryland, and all Defendants are citizens of Florida. The jurisdictional threshold of $75,000.00 is met as some of the Defendants are claiming at least $18,000,000.00 in damages in connection with the automobile accident giving rise to the proceedings below.

This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1291 because the district court entered a final summary judgment order and Final Judgment as to all pending counts in favor of Appellee.

## STATEMENT OF THE ISSUES

The issue on appeal is whether the district court appropriately granted summary judgment in favor of the insurer, GEICO, where the undisputed facts demonstrate that the insurer conducted a prompt and diligent investigation into a complex and novel coverage issue pertaining to an unlisted minor driver operating an unlisted golf cart that was not owned by the policyholders, and, upon completion of the coverage investigation, the insurer promptly tendered the full policy limits to all claimants in an effort to settle all liability claims presented against its insured and scheduled a global settlement conference consistent with Florida law.

1

## STATEMENT OF THE CASE

**1. Course of proceedings and disposition in the court below.**

On April 11, 2020, GEICO filed the instant action, seeking a declaration by the district court that the subject GEICO policy of insurance issued to MONIKA CARIDAD ACUNA and JESSE ACUNA, Policy No.: 4207-94-15-29, did not provide coverage for the July 4, 2016 loss, and a declaration that GEICO had no obligation to defend or indemnify ZABRYNA HERNANDEZ ACUNA, MONIKA CARIDAD ACUNA, and JESSE ACUNA in connection with the claims or suits arising out of the July 4, 2016 accident. [*See* DE 1 at pp. 8-9].

The coverage action ultimately reached this Court and resulted in an adjudication in favor of Appellants, EILEEN GONZALEZ, FRANK BENNAR, individually and as parents and natural guardians of DEVIN BENNAR, a minor, and ZABRYNA HERNANDEZ ACUNA (collectively "Appellants"). *See GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *1 (11th Cir. Sept. 29, 2022); [DE 95]. Following resolution of the coverage question, the parties proceeded with litigating Appellants' claim for bad faith against GEICO.

On July 24, 2023, Appellants filed their operative Amended Counterclaim for bad faith against GEICO. [DE 113]. On February 22, 2024, GEICO filed its operative Amended Answer and Affirmative Defenses to Appellants' Amended Counterclaim. [DE 156].

2

On January 12, 2024, GEICO filed its Motion for Summary Judgment on the bad faith count. [DE 141; DE 142]. Appellants filed a Response in opposition thereto. [DE 152; DE 153]. The district court referred GEICO's Motion for Summary Judgment to the Magistrate Judge for a report and recommendation. [DE 144].

On April 3, 2024, the Magistrate Judge issued a Report and Recommendation recommending that GEICO's Motion for Summary Judgment be granted. [*See* DE 173].

On May 1, 2024, Appellants filed their Objections to the Magistrate Judge's Report and Recommendation. [*See* DE 176]. GEICO thereafter filed its Response in Opposition to Appellants' Objections. [*See* DE 179].

On August 30, 2021, the district court issued an Order Affirming and Adopting the Magistrate Judge's Report and Recommendation and granting GEICO's Motion for Summary Judgment. [*See* DE 180].

The instant appeal ensued.

## 2. Statement of the facts.

On March 30, 2016, GEICO issued a Florida Family Automobile Insurance Policy to Appellants, MONIKA CARIDAD ACUNA and JESSE ACUNA (collectively "Acunas"), Policy No.: 4207-94-15-29. [*See* GEICO Policy, DE 141-

3

2]. The policy listed a 2004 Honda Accord and a 2001 BMW 325i/Xi as insured autos. [*See id.* at GLC 00781].

On July 4, 2016, Appellant, ZABRYNA HERNANDEZ ACUNA, was involved in an accident involving another driver, Nancy Gonzalez, in Miami-Dade County, Florida. At the time of the accident, ZABRYNA HERNANDEZ ACUNA was operating a golf cart, a 1987 Textron E-Z-GO Golf Cart (hereinafter "the golf cart"). [*See* Police Report, DE 141-1 at GLC 01365-01372]. DEVIN BENNAR, Savannah Bennar, Isabella Bennar, and Luka Chiong were riding in the golf cart at the time of the accident. [*Id.* at GLC 01368-01371]. DEVIN BENNAR sustained serious injuries as a result of the accident. [*Id.* at GLC 01371].

On March 3, 2017, GEICO, for the first time, received notice that a liability claim was being made against the aforementioned policy of insurance when attorney Carlos Silva, with the law firm Silva & Silva, P.A. ("Attorney Silva"), faxed a letter of representation ("LOR") to GEICO advising of his representation of EILEEN GONZALEZ, FRANK BENNAR, Savannah Bennar, Isabella Bennar, and DEVIN BENNAR (collectively "the Bennars") in relation to the Bennars' bodily injury claims arising out of the July 4, 2016 accident. [DE 141-3].

Also on March 3, 2017, Attorney Silva placed a call to GEICO to advise that DEVIN BENNAR had sustained a traumatic brain injury as a result of the accident. [*See* GEICO's claim activity log, DE 141-4 at GLC 00727-00728].

4

Upon receipt of the notice of loss, GEICO assigned the claim to claims examiner Sheri Delaney for handling. [*See* DE 141-4 at GLC 00727]. Ms. Delaney immediately proceeded to investigate the loss by ordering the accident report and contacting Attorney Silva's office. [*See* DE 141-4 at GLC 00726]. Ms. Delaney learned that it was unknown who owned the golf cart; that ZABRYNA ACUNA was the driver of the golf cart; that ZABRYNA ACUNA drove through a stop sign at the time of the accident; and that all occupants of the golf cart were ejected. [*Id.* at GLC 00726].

That same day, Ms. Delaney called MONIKA ACUNA to advise that a liability claim had been set up under the Acuna Policy for the Bennar children's claims. [DE 141-4 at GLC 00725].

On March 6, 2017, Ms. Delaney commenced an investigation regarding the ownership of the golf cart. [*See* DE 141-4 at GLC 00714-00715]. Ms. Delaney also added Florida Statute § 316.212 governing golf carts to the claim file for the subject claim. [*Id.*].

On or about March 6, 2017, Ms. Delaney issued multiple reservation of rights ("ROR") letters informing the Acunas that GEICO was reserving its rights under the policy because the loss was reported late and because GEICO was investigating whether there was liability coverage for the July 4, 2016 loss. [*See* ROR Letters, DE 141-5].

On March 7, 2017, Ms. Delaney contacted the office of Attorney Silva to discuss the claim. [*See* DE 141-4 at GLC 00712]. Ms. Delaney left a message, as Attorney Silva was unavailable. [*Id.*].

On March 7, 2017, Ms. Delaney spoke to MONIKA ACUNA, informing her that a claim had been set up and that there was a coverage investigation under way. [*See* DE 141-4 at GLC 00710]. MONIKA ACUNA informed Ms. Delaney that, at the time of the accident, the Acunas were at her sister's home and that the golf cart belonged to her sister. [*Id.* at GLC 00711].

On March 22, 2017, Ms. Delaney sent an email to MONIKA ACUNA to request a recorded interview of MONIKA ACUNA and ZABRYNA HERNANDEZ ACUNA. [*See* DE 141-4 at GLC 00706].

In a letter to Attorney Silva dated March 22, 2017, Ms. Delaney advised the attorney that GEICO was investigating coverage under a reservation of rights. [*See* 3/22/2017 Letter, DE 141-6].

On March 27, 2017, supervisor Tina Swindell left a note in the claim activity log stating that GEICO needed to see the golf cart and take photos in furtherance of its investigation. The note further stated that, after speaking with management, GEICO needed to know whether the golf cart had headlights, taillights, signal lights, rearview mirrors, as well as whether the golf cart was electric. Ms. Swindell also indicated that she wanted to know more about the area where the golf cart was being

operated at the time of the accident, i.e., whether it was a gated community where golf carts are allowed on the streets. [*See* DE 141-4 at GLC 00698-00699].

On the same date, GEICO manager Greg Santini left a note in the claim activity log stating that the golf cart was not listed on the policy and the golf cart may not qualify as a motor vehicle under the terms of the policy. [*See* DE 141-4 at GLC 00697-00698]. The note further instructed the handling adjuster to get a statement from MONIKA ACUNA to find out who was the owner of the golf cart; whether the golf cart was registered to be operated on roads; and whether the golf cart was gas powered or electric. [*Id.*].

On March 29, 2017, Ms. Delaney investigated MONIKA ACUNA's relatives and left a note indicating that Patricia Michelle Chiong may be the sister of MONIKA ACUNA, who MONIKA ACUNA previously identified as the golf cart owner. [*See* DE 141-4 at GLC 00695].

On March 29, 2017, Ms. Delaney called MONIKA ACUNA to request a recorded interview and to confirm that her sister owned the golf cart. Ms. Delaney was unable to speak with MONIKA ACUNA and left a message. [*See* DE 141-4 at GLC 00693]. On the same date, Ms. Delaney called a phone number that she was able to locate for Patricia Chiong. Ms. Delaney was unable to speak to Ms. Chiong or leave a message. [*Id.* at GLC 00692].

Also on March 29, 2017, Ms. Delaney sent a letter to Patricia Chiong requesting a recorded interview and other information pertaining to the claim. [*See* DE 141-4 at GLC 00691-00692]. Ms. Delaney also researched vehicles registered under Patricia Chiong's name but could not locate the golf cart under her name.

Also on March 29, 2017, Ms. Delaney called the office of Attorney Silva to request photos of the golf cart, leaving a voice message for a call back. [*Id.* at GLC 00690].

On the same date, Ms. Delaney requested that a field representative go to MONIKA ACUNA's residence to obtain a recorded interview of ZABRYNA ACUNA. [DE 141-4 at GLC 00690]. Ms. Delaney also placed a separate request for a field representative to visit Patricia Chiong's address to take photos of the golf cart. [*Id.*].

On March 30, 2017, Ms. Delaney spoke to a paralegal from Attorney Silva's office who stated that the attorney's office did not have any photos of the golf cart. [DE 141-4 at GLC 00688]. Attorney Silva's office further stated that the golf cart may be in police custody.

On the same date, Ms. Delaney reviewed a news article from a local newspaper stating that golf carts were required to be equipped with headlights, turn signals, rearview mirrors, reflective warning devices, and rear stop lamps to be appropriate for street use. [DE 141-4 at GLC 00686]. The field representative

8

assigned to the claim also located the Village of Palmetto Bay regulations, which require golf carts to be registered. The field representative indicated that she did not believe that the golf cart was registered with Village of Palmetto Bay. Additionally, the driver of the golf cart, ZABRYNA ACUNA, did not have a driver's license. [*Id.*].

Also on March 30, 2017, Ms. Delaney received a call from MONIKA ACUNA, who stated that she was refusing to permit a recorded interview of her minor daughter, ZABRYNA ACUNA. [DE 141-4 at GLC 00683-00684]. MONIKA ACUNA advised that GEICO should communicate with her attorney, David Alvarez ("Attorney Alvarez").

On the same date, Ms. Delaney received a call from Patricia Chiong, who advised that Luis Chiong was the owner of the golf cart. [DE 141-4 at GLC 00682-00683]. She admitted that the golf cart was not registered with the Village of Palmetto Bay but advised that the golf cart had a windshield; turn signals; break lights; head and taillights; and that the golf cart was gas powered. She advised that she had no photos of the golf cart, and that the golf cart was in police custody. Ms. Chiong refused to provide her phone number and refused to provide a recorded statement to GEICO. [Id.].

On April 5, 2017, supervisor Tina Swindell contacted GEICO's Special Investigations Unit ("SIU") seeking to attempt to gain access to the police impound in order to inspect the golf cart and obtain photos. [DE 141-4 at GLC 00674-00675].

9

On April 5, 2017, GEICO re-issued ROR letters to the Acunas and Attorney Alvarez explaining the coverage investigation. [4/5/2017 ROR Letter, DE 141-7].

On April 6, 2017, a GEICO SIU investigator contacted the Miami-Dade Police Department and obtained information regarding the address of the impound lot and the detective handling the matter. [4/7/2017 Email, DE 141-8]. The SIU investigator was informed that he would not be allowed to access the impound lot or take photos unless the handling detective agreed to come to the lot and give in-person approval for the inspection. [*Id.*]. The SIU investigator called the detective that same day and left a message for a call back. [*Id.*].

On April 7, 2017, Ms. Delaney left a note in the activity log stating that GEICO could not access the impound unless the detective gave authorization and accompanied GEICO personnel, but the detective was out of the office for several days. [DE 141-4 at GLC 00669].

On or about April 7, 2017, GEICO wrote a letter to Attorney Silva advising of GEICO's reservation of rights. [4/7/2017 ROR, DE 141-9].

On April 11, 2017, the GEICO SIU investigator contacted the handling detective and made an appointment to inspect the golf cart for May 3, 2017. [DE 141-4 at GLC 00668].

On May 3, 2017, GEICO re-issued ROR letters to Attorney Silva, MONIKA ACUNA, and Attorney Alvarez advising that GEICO continued to investigate the claims under a reservation of rights. [*See* GEICO's ROR Letters, DE 141-10].

On May 4, 2017, supervisor Tina Swindell spoke to a representative of the golf cart manufacturer who advised that the golf cart was gas powered. [DE 141- 4 at GLC 00659]. Ms. Swindell also received and reviewed photos of the golf cart taken during the inspection at the police impound and noted that the golf cart had headlights, turn signals, and appeared to have gauges on the dash. It was unclear if the golf cart was equipped with rearview mirrors. [*Id*.].

On May 5, 2017, Ms. Delaney uploaded the photos of the golf cart to the claim file. [*See* Photos of the Golf Cart, DE 141-11]. On the same date, Ms. Delaney noted that the SIU investigator spoke to a police detective, Marc Martinez, who advised that the subject golf cart was not street legal because it was gas powered and had no taillights. [DE 141-4 at GLC 00658-00659].

On May 10, 2017, GEICO held a roundtable meeting regarding whether the Acuna Policy provided liability coverage for the golf cart, as it appeared that the golf cart did not meet the definitions of owned auto, non-owned auto, or temporary substitute. [DE 141-4 at GLC 00656-00657].

11

On May 11, 2017, GEICO home office attorney, Nadine Raley, made the decision to afford liability coverage for the July 4, 2016 loss. [DE 141-4 at GLC 00651-00655].

On the same date, GEICO manager Greg Santini authorized the handling adjuster to afford coverage and refer the matter to an attorney to set up a global settlement conference in order to facilitate settlement of the Bennars' claims. [DE 141-4 at GLC 00651].

On May 12, 2017, Ms. Delaney sent a letter to the law firm of Cole, Scott & Kissane, P.A. ("CSK") requesting that CSK set up a global settlement conference in order to settle all claims for the $20,000 policy limits available under the Acunas' Policy. [DE 141-4 at GLC 00647, GLC 00644; GEICO's 5/12/2017 Letter to CSK, DE 141-12].

On May 22, 2017, CSK sent a letter to all interested parties advising that GEICO had made the $20,000 policy limits available to settle all claims arising out of the accident and requesting that all parties attend a global settlement conference on June 13, 2017. [*See* CSK Global Settlement Conference Letters, DE 141-13]. The May 22, 2017 letter specifically advised that GEICO's tender of the policy limits "will never be withdrawn." [*Id.*].

On May 30, 2017, Ms. Delaney sent letters to the Acunas, Attorney Alvarez, and Attorney Silva explaining GEICO's decision to afford bodily injury liability coverage under the Acunas' Policy. [5/30/2017 Letters, DE 141-14].

On or about June 12, 2017, the day before the global settlement conference, Attorney Silva wrote to CSK advising that neither Attorney Silva nor his clients, the Bennars, would be attending the settlement conference because GEICO had purportedly acted in bad faith. [*See* 6/12/2017 Correspondence, DE 141-15].

On June 14, 2017, field representative Vivian Crucet-Cano entered a note in the claim activity log summarizing the global settlement conference. [DE 141-4 at GLC 00618-006]. The note stated that Attorney Silva did not attend the settlement conference.

On June 14, 2017, the day after the global settlement conference, Ms. Delaney left a note stating that a field representative would visit Attorney Silva's office to deliver the $20,000 policy limits, with $10,000 allocated to DEVIN BENNAR and the remainder to Savannah and Isabella Bennar. [DE 141-4 at GLC 00615].

In a letter to Attorney Silva dated June 14, 2017, GEICO advised that it was issuing the $20,000 policy limits to the Bennars to resolve their claims arising out of the July 4, 2016 accident. [*See* 6/14/2017 Letter, DE 141-16]. The letter advised that a GEICO field representative would be delivering the checks to Attorney Silva's office. [*Id.*].

13

On June 15, 2017, GEICO sent a letter to Attorney Silva memorializing the events that took place at the global settlement conference and reiterating that the policy limits "are still available to resolve the Bodily Injury claims" arising out of the July 4, 2016 accident. [*See* GEICO's 6/15/2017 Letter, DE 141-17].

On the same date, Ms. Delaney left a note confirming that the field representative had delivered the policy limit checks to Attorney Silva's office. [DE 141-4 at GLC 00611].

On June 20, 2017, Attorney Silva returned GEICO's tender of the policy limits, stating that the "tender is defective and untimely." [6/20/2017 Letter, DE 141-18].

On June 27, 2017, Ms. Delaney spoke to an attorney at Attorney Silva's office who advised that they wanted to try to settle the claims of Savannah and Isabella Bennar. [DE 141-4 at GLC 00603].

On July 18, 2017, Ms. Delaney received a call from CSK advising that a lawsuit had been filed by EILEEN GONZALEZ and FRANK BENNAR, as parents and guardians of DEVIN BENNAR, against the Acunas, as well as other parties. [DE 141-4 at GLC 00594].

In a letter to the Acunas dated July 24, 2017, Ms. Delaney advised that GEICO had retained CSK to defend the Acunas in the suit. [*See* 7/24/2017 Letters, DE 141-19].

14

On August 7, 2017, Ms. Delaney left a note in the claim activity log stating that CSK had discussed the claims with Attorney Silva's office. Specifically, CSK had offered to resolve the claims of Savannah and Isabella Bennar for $5,000 each, and Attorney Silva's office indicated that they would be willing to accept that offer. [DE 141-4 at GLC 00575-00576].

On August 8, 2017, Ms. Delaney forwarded the settlement drafts for the claims of Savannah and Isabella Bennar to CSK. [8/8/2017 Correspondence, DE 141-20]. Ms. Delaney also called MONIKA ACUNA to advise of the settlement of the claims presented by Savannah and Isabella Bennar. [DE 141-4 at GLC 00575].

On August 17, 2017, GEICO reissued the remaining $10,000 bodily injury limits to Attorney Silva to settle DEVIN BENNAR's claim. [*See* 8/17/2017 Letter, DE 141-21].

On or about August 23, 2017, Attorney Silva again rejected GEICO's tender of the $10,000 policy limits for DEVIN BENNAR, claiming that the tender was "defective and untimely." [8/23/2017 Letter, DE 141-22].

On or about September 5, 2017, GEICO sent a letter to Attorney Silva advising that it was "ready, willing and able to reissue" the check for the $10,000 policy limits to settle DEVIN BENNAR's bodily injury claim. [*See* 9/5/2017 Letter, DE 141-23].

On October 3, 2017, GEICO received executed releases for Savannah and Isabella Bennar. [DE 141-4 at GLC 00553].

On July 14, 2020, the court in the underlying negligence action entered a Final Judgment in favor of EILEEN GONZALEZ and FRANK BENNAR, as parents of DEVIN BENNAR, and against ZABRYNA HERNANDEZ ACUNA in the total amount of $18 million. [*See* Final Judgment, DE 141-25].

## 3. Standard of review.

The Court reviews a grant or denial of summary judgment *de novo*, applying the same legal standards which bound the district court. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995); *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

The undisputed material facts establish that GEICO handled this matter in accordance with its good faith duties under Florida law. As soon as GEICO received the notice of loss on March 3, 2017, GEICO immediately recognized a complex coverage issue that required a detailed investigation.

GEICO went above and beyond its legal duties and utilized all available means not common in a typical coverage investigation to resolve the coverage question presented. For instance, GEICO utilized its Special Investigation Unit to gain access to the evidence impound of the Miami-Dade Police Department, Traffic

Homicide Unit, where the golf cart was stored, to gather information about the golf cart's nature and roadworthiness. Despite Appellants' contention that this investigation was unnecessary, such information was essential to determine whether the golf cart qualified as a covered auto under the liability portion of the policy.

Upon the completion of its coverage investigation, GEICO made the decision to extend coverage for the loss, and GEICO immediately issued a global tender of the full policy limits and coordinated a global settlement conference consistent with its duties under Florida law. When GEICO was informed that the Bennars' attorney, Carlos Silva, Esq., refused to attend the settlement conference, GEICO issued a policy limit tender directly to Attorney Silva's office in order to settle the Bennars' claims. Thereafter, GEICO continuously persisted in its efforts to settle the Bennars' claims; however, Attorney Silva refused to participate in settlement negotiations with respect to the bodily injury claim of DEVIN BENNAR.

Importantly, Attorney Silva's repeated rejections of the policy limit tenders and refusal to partake in settlement discussions establish that GEICO never had a reasonable opportunity to settle DEVIN BENNAR's claim. As the district court correctly found, GEICO cannot be found to have acted in bad faith where there was never a reasonable opportunity to settle.

Appellants allege that GEICO acted in bad faith as a result of GEICO's compliance with its express duties under Florida law. Specifically, Appellants claim

17

that GEICO is in bad faith for (1) conducting a coverage investigation; and (2) pursuing a global settlement conference in a claim involving multiple claimants. Because GEICO's actions in this regard are consistent with its duties and obligations under Florida law, no reasonable jury could conclude that GEICO acted in bad faith; thus, GEICO was entitled to summary judgment. Separately, summary judgment was appropriately entered in GEICO's favor because GEICO was deprived of a reasonable opportunity to settle the bodily injury claim of DEVIN BENNAR.

The district court's entry of summary judgment in favor of GEICO is well supported by the undisputed facts and applicable law. Appellants have failed to raise any genuine issues of fact and have failed to present any legal authority that would warrant reversal of the district court's summary judgment order.

## ARGUMENT

### I. THE DISTRICT COURT APPROPRIATELY GRANTED SUMMARY JUDGMENT IN FAVOR OF GEICO.

### A. The District Court Correctly Followed Florida Law and Bad Faith Precedent from this Court in Granting Summary Judgment.

Appellants argue that the district court purportedly failed "to recognize that the totality of circumstances should have been weighed by a jury." [Appellants' Brief at p. 18]. Appellants seemingly refuse to acknowledge the fact that Florida courts, and federal courts applying Florida law, have consistently granted summary judgment in favor of insurers in bad faith cases like this one involving an insurer's

18

handling of multiple claims. *See Montanez v. Liberty Mut. Fire Ins. Co.*, 478 F.Supp.3d 1242, 1248 (S.D. Fla. 2019), *aff'd*, 824 F. App'x 905 (11th Cir. 2020); *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353 (11th Cir. 2015) (affirming summary judgment in favor of the insurer and reasoning "because there were multiple claimants, [Defendant's] decision to pursue a global settlement was consistent with its duty of good faith under Florida law.").

The opinions and precedent relied upon by the district court, i.e., *Montanez*, *Mesa*, and *Valle*, establish that cases such as the instant matter are appropriately resolved through summary judgment in favor of the insurer under the totality of circumstances standard. As discussed in more detail, *infra*, the district court's summary judgment ruling is grounded upon legal principles articulated in *Mesa*, *Montanez*, *Deary*, and *Valle*, **all of which were affirmed by this Court.**

In *Montanez*, a third-party bad faith action similar to the present case, the district court granted summary judgment in favor of the insurer and found that the insurer's handling of multiple claims arising from the same accident did not rise to the level of bad faith under Florida law. In *Montanez*, the insured's son caused an accident with two other vehicles which resulted in the death of one person and injuries to four others. *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 F. App'x 905, 907 (11th Cir. 2020). Upon being notified of the accident, the insurance company began to investigate coverage and attempted to gather information regarding the

19

claimants' injuries. *Id.* More than a month after being notified of the accident, the insurance company sent a letter to counsel for all claimants, wherein it offered its per accident policy limits and advised that it would arrange a settlement conference to apportion the insurance proceeds. *Id.* at 908. Counsel for the decedent subsequently wrote the insurance company and preemptively rejected any offer by the insurer to settle the wrongful death claim. *Id.* The attorney argued that the insurer had acted in bad faith by trying to schedule a settlement conference and not immediately tendering the per person policy limits to settle the wrongful death claim, despite never making a demand to settle that claim. *Id*. In the subsequent bad faith action, the district court in *Montanez* entered summary judgment in favor of the insurer, holding that no reasonable jury could find that the insurance company failed to act with appropriate care and diligence, or that the month delay between learning of the accident and scheduling a global settlement conference was unreasonable. *Id.* at 909. On appeal, the Eleventh Circuit Court of Appeals affirmed the granting of summary judgment in favor of the insurer, holding that there was "no evidence indicating the Defendant unreasonably exposed its insured to a judgment in excess of his policy limits. *Id*. at 912.

In *Valle*, the district court entered summary judgment in favor of the insurer in a third-party bad faith action involving multiple claims arising from the same accident. *Valle v. State Farm Mut. Auto. Ins. Co*., No. 08-22117-CV, 2010 WL

20

5475608, at *1 (S.D. Fla. Jan. 15, 2010), *aff'd sub nom. Valle v. State Farm Mut. Auto. Ins. Co*, 394 F. App'x 555 (11th Cir. 2010). In *Valle*, the insured caused a motor vehicle accident which resulted in the death of one person and injuries to seven others. *Id.* The plaintiff alleged that the insurer acted in bad faith in failing to immediately tender the $10,000 per person policy limits to the estate of the decedent. *Id.* Thirty (30) days after learning of the accident, the insurer in *Valle* sent a letter to all claimants, which informed them of its willingness to settle for the full policy limits and suggested that a settlement conference take place. *Id.* at *3. At the conference, plaintiff's counsel rejected the offer to settle and then filed a bad faith suit, alleging that the insurer had acted in bad faith when it failed to immediately settle the plaintiff's claim. *Id.* at *2. In upholding summary judgment for the insurer, this Court held that the plaintiff had offered no evidence that the insurer "knew or should have known that its four-and-half month resolution of a policy proceeds distribution in a fatal car accident involving eight potential claimants increased [the insured's] exposure to excess liability." 394 Fed. App'x 555. Further, as this Court explained in *Valle*: "[w]e can find no case law permitting a third-party claimant to participate in settlement negotiations, reject a policy-limits settlement offer, claim post-hoc that the offer was untimely, and prevail in a bad-faith action against the insurer." *Id.* at 557.

21

Similarly, *Mesa* involved a third-party bad faith claim against the insurer in relation to the insurer's handling of multiple claims presented against its insured. 799 F.3d at 1355-56. The insurer received notice of the loss on April 24, 2006, approximately 20 days after the accident, after receiving a letter from one of the injured parties. *Id*. The letter advised that the client was "totally disabled." *Id.* The insurer hired an attorney to identify potential claimants and assist those claimants in reaching a global settlement. *Id.* On May 10, 2006, almost one month after the accident, the attorney hired by the insurer reached out to all claimants advising that the insurer was willing to tender the full policy limits in an attempt to globally settle the claims arising out of the accident. *Id*. Approximately one month later, on June 9, 2006, the attorney hired by the insurer sent another letter to all claimants attempting to schedule a global settlement conference. *Id.* Three of the four claimants advised that they would be willing to settle, proposing equal division of the $20,000 policy limits. *Id*. One of the claimants, Carlos Mesa, never responded to the settlement letters and proceeded to file a lawsuit against the insured while other parties sought to coordinate a settlement. *Id.* On August 17, 2006, Mesa's attorney, for the first time, advised the attorney hired by the insurer that Mesa would not accept anything less than the full $10,000 per person limit. *Id*. at 1357. Mesa's lawsuit proceeded and resulted in an excess judgment against the insured for $750,000. *Id*. Mesa then filed a suit against the insurer alleging that the insurer acted in bad faith. *Id.*

The Eleventh Circuit Court of Appeals affirmed entry of summary judgment in favor of the insurer, finding that Mesa failed to provide sufficient evidence for a reasonable jury to find bad faith. *Id*. at 1359. This Court explained that the insurer diligently proceeded with an investigation of the claim; hired an attorney to facilitate a global settlement conference; and offered the full per accident policy limits to all claimants in furtherance of a global settlement. *Id.* This Court observed that neither Mesa nor Mesa's attorney ever communicated with the insurer or the attorney hired by the insurer regarding Mesa's position as to the proposed global settlement. *Id.* This Court maintained that the insurer's decision to pursue a global settlement was consistent with its good faith duties under Florida law. *Id*. at 1360. With regard to Mesa's bad faith allegations of delay, this Court specifically noted that "it is not unusual for settlement negotiations to last several months." *Id.*

Just like the insurer in *Montanez*, GEICO faced a coverage issue relating to an unlisted minor driver. Additionally, this matter involved a significantly more complicated coverage issue because an unlisted driver was operating an unlisted golf cart not owned by the policyholders. GEICO proceeded with its diligent coverage investigation and concluded the investigation within sixty-nine (69) days, even though there were significant obstacles beyond GEICO's control such as the involvement of Miami-Dade Police Department's Traffic Homicide Unit. As soon as GEICO completed its coverage investigation, it globally tendered the full $20,000

23

per occurrence policy limits and hired an attorney to facilitate a global settlement conference.

Just like the insurers in *Valle* and *Mesa*, GEICO performed a diligent investigation of the loss; hired an attorney to facilitate a global settlement conference; and offered the full per occurrence policy limits to the Bennars in furtherance of a global settlement of all claims. No reasonable jury could conclude that GEICO's decision to afford coverage and globally tender its full policy limits at the conclusion of its coverage investigation was in bad faith.

Interestingly, Appellants do not attempt to factually distinguish *Montanez* or *Valle*. Instead, Appellants simply take the position that those cases are unpublished. However, the fact that those opinions are unpublished does not defeat the fact that the opinions are persuasive and instructive here and, more importantly, that summary judgment is appropriate where an insurer diligently undertakes a claim investigation and globally offers its policy limits in an attempt to resolve all claims made against its insureds.

Separately, Appellants complain that *Montanez* and *Valle* place "improper" emphasis on the claimant's actions, as opposed to the insurer's actions. [Appellants' Brief at p. 36]. Rather than any "improper emphasis", a review of the cases makes clear that this Court properly considered the claimants' actions and willingness to settle under the totality of circumstances. *Montanez*, 824 F. App'x at 911-12; *Valle*,

24

394 F. App'x at 557; *see also DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. 4th DCA 1975); *Barry v. GEICO Gen. Ins. Co.*, 938 So. 2d 613, 618 (Fla. 4th DCA 2006) (holding that the claimant's conduct was "relevant to the question of whether there was any realistic possibility of settlement.").

### B. GEICO Fulfilled its Duties Under *Powell* and *Farinas* by Globally Tendering the Policy Limits Upon Completion of its Coverage Investigation.

### i.    GEICO fulfilled its duty under *Powell* by promptly initiating settlement negotiations after concluding its coverage investigation.

Appellants make vague and conclusory allegations that there are issues of fact regarding GEICO's compliance with its obligations under *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). Yet, Appellants did not cite to any particular facts purportedly in dispute in this regard. [Appellants' Brief at pp. 18-19]. As discussed below, the undisputed facts unequivocally show that GEICO complied with its obligations under *Powell* by globally tendering its full policy limits upon the completion of its coverage investigation, even in the absence of any demand for the policy limits.

Under Florida law, "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). Where there is a coverage issue involved, an

insurer complies with its *Powell* duty by initiating settlement negotiations upon completion of the insurer's coverage investigation. *Montanez*, 478 F.Supp.3d at 1248. The *Montanez* court explained as follows:

> After learning of the accident, Defendant diligently investigated a potential coverage issue, sought out police and events reports, contacted and advised its insured, and offered, within thirty-two days, to settle all claims by tendering its fully policy limits in compliance with *Powell*. Defendant did so in the absence of a specific demand from Plaintiff and without any indication that might suggest urgency in the resolution of Plaintiff's claim.

*Montanez*, 478 F.Supp.3d at 1248. Pursuant to *Montanez*, GEICO fulfilled its *Powell* duty by globally tendering the full policy limits upon conclusion of its coverage investigation.

Contrary to Appellants assertions, GEICO had no duty to immediately tender the policy limits to the most injured victim before its coverage investigation was complete. *See Montanez*, 824 F. App'x at 911. Because GEICO globally tendered the full policy limits upon completion of its coverage investigation, it complied with its good faith duty under *Powell*. *Montanez*, 478 F.Supp.3d at 1248 (the insurer acted in good faith "by tendering its full policy limits in compliance with *Powell*.").

### ii. GEICO's efforts to schedule and conduct a global settlement conference were consistent with its good faith duties under *Farinas*.

Where there are multiple competing claims arising out of a single accident, the insurer has a duty of good faith to: (1) investigate all claims to determine how to

best limit the insured's liability, (2) seek to settle as many claims as possible within the policy limits, (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement, and (4) keep the insured informed of the claim resolution process. *Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So.2d 555, 560 (Fla. 4th DCA 2003); *Mesa*, 799 F. 3d 1353 (upholding summary judgment in favor of insurer, holding that an insurer's decision to pursue a "global settlement" to investigate and resolve as many claims as possible "was consistent with its duty of good faith under Florida law.").

As discussed, *supra*, *Mesa* holds that an insurer's pursuit of a global settlement conference in a multi-claimant scenario is consistent with its good faith duties under Florida law. 799 F.3d at 1359-60. Just like the insurer in *Mesa*, GEICO hired an attorney, CSK, to set up a global settlement conference and to globally tender the policy limits to all claimants. [DE 141-4 at GLC 00647, GLC 00644; DE 141-12; 141-13]. Just like the claimant's attorney in *Mesa,* who ignored the invitation to attend the settlement conference, the Bennars' lawyer, Attorney Silva, refused to participate in the global settlement conference. [DE 141-15]. Just like the insurer in *Mesa*, GEICO "was diligent in its efforts to settle the claims against its insured and there exists no causal connection between the actions of [GEICO] and the entry of the excess judgment against its insured." *Mesa*, 799 F.3d at 1360.

27

Appellants attempt to disregard an insurer's directives under cases like *Farinas* and *Mesa* by claiming that the instant case was not a "true" multi-claimant scenario. This argument presents nothing more than unsupported legal fiction, as the undisputed facts show that the accident caused injuries to three claimants, i.e., DEVIN BENNAR, Savannah Bennar, and Isabella Bennar. Belying contention that this was not a "true" multi-claimant scenario is the undisputed fact that GEICO was able to settle two (2) of the bodily injury claims presented by Isabella and Savannah Bennar. [DE 141-18; DE 141-24].

Appellants have not provided any legal basis to support the notion that GEICO acted improperly by coordinating a global settlement conference with the purpose of resolving all potential claims against its insureds. To the extent Appellants seek to argue that GEICO should have foregone its attempts to coordinate a global settlement conference due to the severity of DEVIN BENNAR's injuries, this claim stands in opposition to this Court's decision in *Montanez*. 824 F. App'x at 905 ("There is no duty under Florida law for an insurer in a multiple competing claimant situation to immediately tender a full split limit to the most injured victim, even where the insurer knows, and the other claimants agree, which victim is the 'most injured.'").

GEICO acted in good faith and consistent with Florida law by first seeking to settle as many claims as possible through a global settlement conference, and there

is no colorable argument that GEICO's efforts to pursue a global settlement was bad faith. *See Farinas*, 850 So.2d 560; *see also Mesa*, 799 F.3d 1353 (11th Cir. 2015) ("because there were multiple claimants, [Defendant's] decision to pursue a global settlement was consistent with its duty of good faith under Florida law.").

GEICO's good faith efforts to resolve this matter and protect its insureds did not cease when Attorney Silva refused to attend the global settlement conference. When the Bennars' attorney informed GEICO the day before the global settlement conference that he refused to attend, GEICO continued its diligent efforts to resolve the claims against its insureds by issuing payment for the full policy limits directly to Attorney Silva's office only one (1) day after the global settlement conference was scheduled to take place. [DE 141-16].

Obviously, GEICO could not have known that Attorney Silva would refuse to attend the global settlement conference, or that GEICO's compliance with its duties under *Farinas* would elicit unsupported allegations of "bad faith." Nonetheless, GEICO complied with its good faith duties under Florida law by fully investigating the claims presented, seeking to settle all claims globally, and making repeated efforts to minimize the possible exposure to its insureds by settling those claims which presented the possibility of settlement. *See Farinas*, 850 So.2d 560.

**C. There is No Genuine Dispute as to Any Material Fact with Respect to the Necessity and Extent of GEICO's Coverage Investigation.**

29

Under Florida law, an insurer has a duty to diligently investigate a claim. *Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) ("The insurer must investigate facts."); *Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008), *aff'd*, 342 F. App'x 485 (11th Cir. 2009) (following *Boston Old Colony*).

As a threshold issue, Appellants' Initial Brief repeatedly confuses the pertinent coverage issue by referencing a question of coverage for PIP benefits under a policy of insurance issued to the Bennars. To be clear, the instant bad faith case arises solely out of a bodily injury claim made by the Bennars against the GEICO Policy issued to the Acunas, Policy No. 4207-94-15-29. [DE 141-2]. The availability of PIP benefits under an entirely separate policy issued to the Bennars has absolutely no bearing on GEICO's handling of the bodily injury claim made under the Acuna policy. [DE 173 at p. 16]("The bad faith claim at issue is limited to GEICO's conduct in processing the bodily injury claim made against the *Acuna Policy*, which GEICO undisputedly learned about in March 2017") (emphasis in original).

Furthermore, Appellants' insistence that GEICO's coverage investigation was purportedly "unnecessary" or "obvious" [Appellants' Brief at p. 20] takes a short-sighted and retroactive view of the coverage issue presented. Pursuant to the above-cited Florida law, GEICO had a good faith duty and obligation to investigate the facts of the loss and to resolve the coverage issue stemming therefrom. Appellants'

30

retrospective attempt to diminish the complexity and necessity of the coverage investigation is unavailing, as recognized by the contradictory decisions on the Declaration Judgment Action.

The coverage investigation involved an inherently complex and novel issue of whether a golf cart constitutes a "non-owned auto", an "owned auto", or a "temporary substitute auto" under the terms of GEICO's policy. As the district court correctly noted, the subject loss involved an accident between a car and a golf cart operated by an "unlicensed teenager who did not (and whose parents did not) own the golf cart." [*See* DE 173 at p. 17]. Furthermore, the golf cart was not listed as an insured vehicle on the GEICO policy and there was no information listed in the police report regarding the golf cart's registration, license number, ownership, or insurance information. [DE 141-1 at p. 3]. These facts alone present a unique coverage issue, far from the typical auto claim that liability insurers normally face.

Appellants also assert that GEICO's coverage investigation was purportedly "undone in a **single day** by … GEICO's in-house legal counsel." [Appellants' Brief at p. 21 (emphasis in original)]. However, Appellants notably fail to cite to any testimony or evidentiary support for this notion, relying solely on supposition. Furthermore, Appellants conveniently omit the fact that GEICO's in-house counsel was only able to conduct a legal coverage analysis under *Martin v. Nationwide Mut. Fire Ins. Co*., 235 So. 2d 14, 16 (Fla. 2d DCA 1970) and other Florida case law

*because of* the thorough factual investigation conducted by GEICO's claims department pertaining to the features and nature of the golf cart, specific use of the golf cart, ownership of the golf cart, and other essential facts that required a detailed investigation. Even when GEICO concluded its coverage investigation and held a roundtable discussion on May 10, 2017, the coverage issue was far from clear. [DE 141-4 at GLC00656-00657]. GEICO's decision to afford the full benefits of coverage in the face of an incredibly complex coverage issue—which ultimately required clarification by this Court—further exemplifies GEICO's good faith conduct and efforts to protect its insureds. [*Id.* at GLC00651-00655]. Thus, Appellants' contention that GEICO's investigation "was focused on a basis to deny coverage" quickly falls flat in light of the undisputed fact that GEICO made the decision to afford full liability coverage at the completion of its investigation, even though the issue was far from clear. [Appellants' Brief at p. 20].

Despite Appellants' contention, the differing views within GEICO regarding coverage under the policy demonstrate the intricacy of the coverage issue. As the procedural history of the underlying coverage litigation shows, this coverage issue was so complex that even the district court and this Court arrived at different conclusions as to whether an unlisted golf cart may qualify as a "private passenger auto" under the terms of the policy. *See GEICO Gen. Ins. Co. v. Gonzalez*, No. 21-13304, 2022 WL 4545166, at *1 (11th Cir. Sept. 29, 2022). Thus, it cannot be said

32

that GEICO acted in bad faith by weighing different conclusions and ultimately deciding to afford coverage.

The thrust of Appellants' unsupported argument is that GEICO's coverage investigation was either "unnecessary" or took too long. The material facts, as expressly relied upon by the district court, clearly rebut these claims. First, GEICO received notice of the claim presented by the Bennars against the Acunas' policy on March 3, 2017, via Attorney Silva's letter of representation. [*See* DE 141-3]. GEICO immediately recognized the coverage issue and GEICO promptly began its coverage investigation. [DE 141-4 at GLC 00714-00715]. However, there were unique circumstances that hindered GEICO's coverage investigation. For instance, the subject golf cart was in the custody of the Miami-Dade Police Department, Traffic Homicide Unit. [See DE 141-11 at GLC 00924]. GEICO could not simply access the golf cart; instead, GEICO had to follow specific law enforcement protocols to inspect the golf cart in order to complete the coverage investigation. [See DE 141-8]. Moreover, the golf cart was not listed on the policy, was not identified with particularity in the traffic accident report, was not registered with the Village of Palmetto Bay, and did not bear a license plate or a registration of any kind, adding an additional layer of complexity in locating the golf cart and identifying its owner. [*See* DE 141-1; DE 141-2 at GLC 00781].

33

Through significant efforts made by GEICO's Special Investigations Unit, GEICO was able to set a May 3, 2017 appointment with the homicide detective and ultimately gained access to the police impound lot to inspect the golf cart. [DE 141-8; DE 141-4 at GLC 00668; DE 141-4 at GLC00669]. On May 11, 2017, within a mere matter of days of the inspection, GEICO's home office attorney made the decision to afford liability coverage for the July 4, 2016 accident. [DE 141-4 at GLC 00651-00655].

Importantly, and contrary to Appellants' assertion, GEICO never withdrew or "retreated from" its decision to afford coverage. Once GEICO made the decision to afford coverage under the Acuna policy for the Bennars' bodily injury claims, it expressly advised that its tender of the policy limits would "never be withdrawn." [DE 141-13; DE 152 at ¶ 39]. Even after Attorney Silva's repeated tender rejections, GEICO again advised that it was nevertheless "ready, willing and able to reissue" the policy limits at any time to settle DEVIN BENNAR's claim. [DE 141-23; DE 152 at ¶ 55].

Finally, Appellants' attempt to create a factual issue with regard to GEICO's coverage investigation fails as a matter of procedure. As pointed out by the Magistrate Judge below, Appellants failed to comply with Local Rule 56.1(b)(2) by not providing specific evidentiary citations to the factual averments in GEICO's Statement of Material Facts. [DE 173 at p. 2, n. 3]; [DE 141; DE 152]. Pursuant to

34

Local Rule 56.1(c), "[a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts…" Appellants' Response to GEICO's Statement of Material Facts [DE 152] is almost entirely unsupported with citations to record evidence. In this appeal, Appellants again resort to the same tactic of claiming that there are factual issues, without identifying specific facts or record evidence in support.

Even absent Appellants' deficient opposition to GEICO's Statement of Material Facts, the instant matter presents no genuine dispute of material fact with regard to GEICO's claim handling and investigation that would preclude summary judgment in GEICO's favor.

### D. GEICO Cannot be Found to Have Acted in Bad Faith as a Matter of Law Where it was Deprived of a Reasonable Opportunity to Settle.

Distinct from the conclusion that no reasonable jury could conclude that GEICO acted in bad faith by diligently seeking to protect its insured through a global settlement of all claims, GEICO is separately entitled to summary judgment on another basis—because GEICO was deprived of a reasonable opportunity to settle the bodily injury claim of DEVIN BENNAR.

Florida law holds that where an insurer had no reasonable opportunity to settle the claim, the insurer "could not have acted in bad faith as a matter of law." *Deary v. Progressive Am. Ins. Co.*, 536 F.Supp.3d 1258, 1266 (S.D. Fla. 2021), *aff'd*, No.

21-11878, 2022 WL 2916358 (11th Cir. July 25, 2022); s*ee also RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095 (Fla. 4th DCA 1997); *Hayas v. GEICO Gen. Ins. Co.*, 2014 WL 6883131 (M.D. Fla. 2014); *Barnard v. GEICO Gen. Ins. Co.*, 448 Fed.Appx. 940, 943-44 (11th Cir. 2011). As the district court correctly pointed out, "although it is usually for the jury to decide whether an insurer has acted in bad faith, it is well-established that an insurer may be entitled to summary judgment if the insurer did not have a reasonable opportunity to settle the claim at issue." [DE 173 at p. 11 (citing *Mesa*, 799 F.3d at 1353; *Montanez*, 2019 WL 3302308; *Deary*, 536 F.Supp.3d at 1266; *Valle v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 5475608 (S.D. Fla. Jan. 15, 2010), *aff'd*, 394 F. App'x 555 (11th Cir. 2010))].

In the instant matter, GEICO was not notified of the bodily injury claims made against the Acunas' policy until approximately eight (8) months after the July 4, 2016 loss. [DE 141-3]. It is undisputed that the Bennars and Attorney Silva never made a demand for the policy limits and never requested any contractual benefits to settle DEVIN BENNAR's bodily injury claim. Despite GEICO's efforts to coordinate a global settlement conference, Attorney Silva advised GEICO **the day before the settlement conference** that he and his clients refused to attend, and thus, refused to participate in settlement discussions. [DE 141-15]. Upon learning that there would be no opportunity to resolve the Bennars' claims at the global settlement conference, GEICO promptly made the decision to issue the $20,000 policy limit

36

tender to the Bennars and hand-delivered a check for the full policy limits to Attorney Silva's office the day after the global settlement conference was scheduled. [DE 141-16]. Thus, **GEICO delivered a policy limit check to Attorney Silva's office a mere two (2) days after Attorney Silva advised that he refused to participate in the global settlement conference**. [DE 141-16]. Attorney Silva rejected GEICO's tender as "untimely" and continued to reject GEICO's efforts to settle DEVIN BENNAR's claim at all times thereafter. [DE 141-18; 141-21; 141-22; 141-23].

Particularly interesting is Attorney Silva's claim that GEICO's June 14th hand-delivered check for the $20,000 policy limits was "untimely", considering that GEICO was still able to settle the claims of Savannah and Isabella Bennar for the $10,000 per person limit, even after the settlement tender was initially rejected by Attorney Silva as "untimely." [DE 141-18; 141-24]. Simply put, Attorney Silva's initial position was that the tender was "untimely" as to Savannah, Isabella, and DEVIN BENNAR, but that did not preclude a later settlement of Savannah and Isabella's claims. [*Id.*]. Yet, these claims all arose from the same loss, within the same family, the same facts, and the same timing of the settlement tender. The only distinction between these claims is the severity and the overall value of DEVIN BENNAR's claim in relation to the minimal policy limits available. The evidence is clear that the timing of GEICO's tender in no way precluded settlement of DEVIN

37

BENNAR's claim, because had it been so, it would have also precluded the settlement of the other Bennar claims.

It is also notable that, as soon as GEICO concluded its coverage investigation, coordinated the global settlement conference, and made the full policy limits available in May of 2017, Attorney Silva, for the first time, began levying allegations of "bad faith" in an obvious attempt to collect more than the policy limits, despite never making a request or demand for the policy limits. [DE 141-15]. As this Court in *Valle* recognized: "[w]e can find no case law permitting a third-party claimant to participate in settlement negotiations, reject a policy-limits settlement offer, claim post-hoc that the offer was untimely, and prevail in a bad-faith action against the insurer." *Valle*, 394 F. App'x at 557.

Furthermore, although not exchanged directly with GEICO, there are other correspondences memorializing Attorney Silva's unwillingness to resolve DEVIN BENNAR's claim for $10,000, which further corroborates the lack of opportunity to settle that claim for the GEICO policy limits. Specifically, on April 21, 2017, Attorney Silva sent a letter to the law firm representing State Farm Insurance Co., returning State Farm's $10,000 policy limit check and specifically advising that "we are not in a position to resolve the claim of Devin Bennar at this time." [DE 141-26]. The timing of this correspondence is significant, as Attorney Silva had already rejected State Farm's $10,000 policy limits for DEVIN BENNAR approximately

38

one (1) month before GEICO concluded its coverage investigation and advised that its policy limits were available on May 22, 2017. [DE 141-13]. Similarly, there are letters from the State Farm attorneys as early as March 22, 2017, which memorialize conversations with Attorney Silva and confirm that Attorney Silva "was not in a position to settle Devin's claim", even though State Farm had tendered their $10,000 policy limits "over six months" prior to that letter. [DE 141-26].

Finally, Appellants attempt to belatedly create a previously undisclosed "opportunity to settle" by way of a pair of affidavits that were only submitted by Attorney Silva and EILEEN GONZALEZ in response to GEICO's Motion for Summary Judgment. However, Appellants' attempt to rely on these affidavits to create a retrospective opportunity to settle is unavailing for several reasons.

First, the affidavits only state that EILEEN GONZALEZ would have considered settling DEVIN BENNAR's injury claim "in the first few weeks" following Attorney Silva's March 3, 2017 letter of representation, which was well before GEICO obtained access to the police impound and completed its investigation of the facts, as was required under Florida law.

It is also of substantial significance that neither the Bennars nor Attorney Silva ever communicated any deadline to GEICO during its handling of the claim, nor was GEICO ever informed that the Bennars would have considered settling DEVIN BENNAR's claim within any specific timeframe. In fact, this arbitrary deadline was

39

not communicated to anyone until Appellants filed their Response to GEICO's Statement of Material Facts in this case. [DE 152-2; 152-3].

The position taken by Appellants that GEICO purportedly had an undisclosed opportunity to settle the claim within a "few weeks" of learning of the claim without completing its coverage investigation cannot constitute an actual opportunity to settle where GEICO was not even aware of such a deadline. More importantly, there is not a tenable argument that this constituted a "reasonable" opportunity to settle, as is required under Florida law. *Deary*, 536 F.Supp.3d at 1266 ("where the insurer had no **reasonable** opportunity to settle the claim, it could not have acted in bad faith as a matter of law.") (emphasis added).

The conduct and actions, or lack thereof, of a claimant's attorney are inherently relevant in assessing whether there was an opportunity to settle a claim for the policy limits. *Barry*, 938 So.2d at 613. The undisputed evidence demonstrates that as soon as GEICO completed its coverage investigation, it made the full policy limits available, it settled the only claims the Bennars were willing to settle, and it remained "ready, willing and able" to continue to re-issue its policy limit tender as many times as necessary to resolve DEVIN BENNAR's claim. [DE 141-13; 141-23]. Nonetheless, despite GEICO's persistence and diligence in trying to resolve all competing claims, as well as the claim of DEVIN BENNAR, GEICO was deprived

40

of a reasonable opportunity to settle; therefore, GEICO cannot be found to have acted in bad faith as a matter of law.

### E. Appellants Rely on Case Law that is Either Inapplicable or Supports GEICO's Position.

Appellants cite to *Ilias*, *Aldana*, *Brink*, *Eres*, and *American Builders* to argue that GEICO should have tendered the policy limits in this case sooner. [Appellants' Brief at pp. 22-25]. However, those cases are inapposite and, in actuality, support GEICO's position in many respects.

In *Ilias*, the claimant, Daniel Ilias, was severely injured as a result of the accident caused by the insured, Scott Dunbar. *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1340 (11th Cir. 2023). The insurer learned about the accident on the same date. *Id.* at 1341. Approximately one week after the accident, the claimant's attorney contacted the insurer and advised of the serious injuries suffered by Ilias. *Id.* One week after that, the insurer confirmed that the insured was solely responsible for the accident and the insurer decided to accept liability for the claim. *Id.* But the insurer did not advise the claimant's attorney and did not consider tendering the policy limits before acquiring the police report. *Id.* Approximately one month later, the insurer advised the claimant's attorney that it would be tendering the policy limits. *Id.* The claimant's attorney, however, proceeded to file a suit and obtain an excess judgment against the insured. *Id.*

41

On appeal, this Court reversed the lower court's entry of summary judgment in favor of the insurer because genuine issues of fact existed stemming from the fact that the insurer delayed tendering the policy limits for a month after deciding to accept liability, and the insurer failed to inform the claimant that the insured had no additional insurance. *Id.* at 1345.

*Ilias* is entirely distinguishable from the instant matter; namely, it did not involve a coverage dispute, an unlisted minor driver, or an unlisted golf cart. The only information that the insurer in *Ilias* needed to decide to tender the policy limits was the police report because the extent of Ilias' injuries was never in dispute. *See Ilias*, 61 F.4th at 1342. Unlike *Ilias,* where one of the adjusters "misread the claim file and concluded that Ilias had only suffered a 'cervical strain,'" *see id.* at 1342, GEICO's claims handlers were accurate and consistent in their assessment that DEVIN BENNAR had suffered catastrophic injuries.

Additionally, unlike *Ilias* where the insurer delayed the tender of the policy limits after acknowledging liability, there was no delay in GEICO's tender. Immediately following the coverage investigation, GEICO extended coverage and tendered the policy limits on May 11, 2017; and the following day, GEICO asked CSK to globally tender the policy limits and facilitate a global settlement conference. [*See* DE 141-4, GLC 00651-00655, GLC 00647, GLC 644; DE 141-12]. Unlike the

42

facts in *Ilias,* GEICO proceeded with haste and precision. [*See* DE 141-4, GLC 00651-00655, GLC 00647, GLC 644; DE 141-12].

Similarly, and without belaboring the facts of each case, none of the other cases cited by Appellants, i.e., *Brink*, *Eres*, and *American Builders* involve a set of facts that is remotely close to the case at bar. *Brink* involved a district court's failure to give a jury instruction. *See Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 925 (11th Cir. 2022). *Eres* involved an affirmance of summary judgment in favor of the insurer. *See Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1279 (11th Cir. 2021). *American Builders* involved an issue regarding the insured's failure to obtain the insurer's consent before settling the liability claim. *See Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 857 (11th Cir. 2023).

Importantly, by advancing the argument that the severe injuries of DEVIN BENNAR invoked a "Ticking Time Bomb" doctrine, Appellants willfully disregard the fact that virtually all of the cases relied upon by the district court in this matter involved very serious injuries comparable to those of DEVIN BENNAR. Specifically, *Montanez* involved a death of one of the claimants. 824 Fed. Appx. at 907. *Mesa* involved a claimant who became "totally disabled" and lost an eye due to the accident. 799 F.3d at 1356. *Valle* likewise involved a death of a claimant. 2010 WL 5475608. To the extent that Appellants claim that the instant case is somehow

43

different from the cases relied upon by the district court due to the severity of DEVIN

BENNAR's injuries, their argument lacks a basis in law and fact.

Although Appellants repeatedly insist that this Court should not consider an unpublished opinion, Appellants ironically turn to an unpublished opinion for support in *Aldana v. Progressive Am. Ins. Co.*, 828 F. App'x 663 (11th Cir. 2020). However, Appellants' characterization of the opinion in *Aldana* is misleading to say the least. Appellants take great liberties in claiming that the court in *Aldana* "reversed summary judgment, finding that the insurer's insistence on a settlement conference did not insulate it from bad faith because the insurer reasonably knew that the global settlement would be unsatisfactory to claimants who suffered the most severe injuries." [Appellants' Brief at p. 40]. Not only is Appellants' statement in this regard factually untrue, but it also directly contradicts the precise language of this Court's opinion. Specifically, the Court in *Aldana* held that, under Florida law, an insurer is "not required to *immediately* tender the policy limits to the most injured parties." *See Aldana*, 828 F. App'x at 670 (citing *Mesa*, 799 F.3d at 1360) (emphasis in original). This Court went on to state that "[n]o reasonable jury could conclude that Progressive's initial decision to offer the full $500,000 bodily injury policy limits to try to globally settle all claims against Pyles was unreasonable or in bad faith." *Id.* Thus, contrary to Appellants' claim, the *Aldana* opinion actually supports

44

GEICO's decision to pursue a global settlement as consistent with its good faith duty under Florida law.

The operative facts upon which *Aldana* was decided occurred **after** the insurer's initial global tender of the policy limits and had no bearing on the insurer's decision to pursue a global settlement. *Id.* ("But there is sufficient, competent evidence in the record for a reasonable jury to conclude that Progressive's actions in the months leading up to the August 2014 lawsuit were not in keeping with its good-faith duty to Pyles."). The factual details and the insurer's shortcomings in the *Aldana* case, as reflected by the specific record in that matter, are inapposite and inconsequential to the Court's analysis here.

## II. THE TRIAL COURT CONSIDERED ALL RELEVANT AND ADMISSIBLE RECORD EVIDENCE IN GRANTING SUMMARY JUDGMENT

### A. The District Court Fully Considered Appellants' Affidavits and Reviewed the Pertinent Portions of the Record *De Novo*.

Appellants complain that the district court purportedly did not give enough weight to the affidavits that Appellants belatedly submitted in an effort to avoid GEICO's Motion for Summary Judgment. However, the district court's Summary Judgment Order specifically stated that the court conducted a *de novo* review of the pertinent portions of the record, including the affidavits. [DE 180]. Further, the district court's order specifically stated that it did not make credibility

determinations at the summary judgment stage, and the Court did not adopt the Magistrate Judge's characterization of the affidavits as "self-serving." [*Id.*].

Importantly, the affidavits only state that EILEEN GONZALEZ would have considered settling DEVIN BENNAR's injury claim "in the first few weeks" following Attorney Silva's March 3, 2017 letter of representation, which was well before GEICO obtained access to the police impound and completed its investigation of the facts, as was required under Florida law. Appellants' contention that the district court purportedly disregarded, or did not give enough weight to, the affidavits is entirely false. The Magistrate's Report and Recommendation, adopted by the district court, clearly states that the court considered the affidavits submitted by Appellants "in the light most favorable to the Bennars." [*See* DE 173 at p. 18].

Furthermore, the Magistrate Judge and the district court were correct to point out that the affidavits did not create a genuine issue of material fact. [*Id.*]. The Bennars' willingness to settle DEVIN BENNAR's injury claim "in the first few weeks" of March of 2017 does not constitute a "reasonable opportunity to settle" the claim within the policy limits. This is particularly true considering that neither the Bennars nor Attorney Silva ever communicated any such deadline to GEICO during its handling of the claim. In fact, this unspoken settlement deadline was not communicated to anyone until Appellants filed their Response to GEICO's Statement of Material Facts in this case. [DE 152-2]. The notion that GEICO

46

purportedly acted in bad faith by failing to meet a secret, "few week" deadline that Appellants chose to reveal only in the prosecution of this bad faith case is unpersuasive to say the least.

Furthermore, at the time the Bennars and their lawyer decided they were not willing to settle DEVIN BENNAR's claim within "the first few weeks" of GEICO even learning of the claim, GEICO was still in the middle of its coverage investigation. Appellants' request that the Court find that there was a reasonable opportunity for GEICO to settle the Bennars' claims prior to conclusion of GEICO's investigation is contrary to applicable Florida law. *See Gutierrez*, 386 So. 2d at 785; *Maldonado*, 546 F.Supp.2d at 1353. Accordingly, even if taken as true and in a light most favorable to Appellants, the affidavits submitted by Appellants do not create a genuine issue of material fact. Simply stated, requiring GEICO to tender the policy limits "in the first few weeks" of learning of the claim without even knowing of such a deadline does not constitute a "reasonable opportunity to settle."

Additionally, despite Appellants' contention, the district court and the Magistrate Judge expressly accepted the affidavits as true and specifically noted that it did not change the outcome of the legal analysis regarding lack of a "reasonable" opportunity to settle. [DE 173 at p. 19 ("accepting as true that the Bennars would have accepted $10,000 for Devin's claim if GEICO tendered the money before the Bennars' unspoken deadline, the Bennars never gave GEICO a reasonable

opportunity to settle Devin's claim because GEICO could not have known that its coverage investigation, which it had a right to conduct, needed to be resolved in only a few weeks if it was going to have a chance to settle for the policy limits.")]. Even if it could be concluded from Appellants' vague affidavits that it was possible to settle DEVIN BENNAR's claim within a few weeks of GEICO learning of the claim, the fact that the claim did not settle in that time frame does not establish that GEICO acted in bad faith because there was never a "reasonable" opportunity to settle the claim.

**B. Appellants' Expert Report is Hearsay and Cannot Create Genuine Issues of Material Fact.**

Appellants' insistence that the district court should have considered the expert report of Appellants' expert, Ron Kammer, Esq., is entirely misguided. Mr. Kammer's expert report is not only inadmissible hearsay, but an expert's Rule 26 report would be improper for the district court's consideration in assessing summary judgment.

"Expert reports are hearsay; that is, a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Johnston v. Borders*, No. 615CV936ORL40DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018) (citing Fed. R. Evid. 801(c); *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12–20322–CIV, 2013 WL 8695361, at *2 (S.D.

Fla. Apr. 4, 2013); *Neagle v. Illinois Tool Works, Inc.*, No. 1:08-cv-2080-WSD, 2011 WL 13173913, at *1 (N.D. Ga. Feb. 11, 2011)); *see also* Fed. R. Evid. 802; *Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F.Supp.3d 1143 (M.D. Fla. 2019) (holding that an expert's report is inadmissible under the residual exception to the hearsay rule); *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 618CV1149ORL78DCI, 2020 WL 5848317, at *5, n.1 (M.D. Fla. Oct. 1, 2020) ("expert reports are generally inadmissible as evidence at trial.").

Appellants' reliance on cases such as *Moore v. GEICO Gen. Ins. Co.*, 633 F.App'x 924 (11th Cir. 2016) and *Aldana* in this regard is misplaced. Unlike Mr. Kammer, the expert in *Moore* actually provided sworn testimony on his opinions. *See Moore*, 633 F.App'x at 930 ("Moore opposed GEICO's motion for summary judgment in part by submitting expert testimony that evaluated GEICO's conduct in this case. Moore's expert testified that GEICO's handling of the claims against Moore deviated from industry standards...."). This very same distinction is also present in the *Aldana* matter. *See Aldana*, 828 F. App'x at 663 ("...the Aldanas' expert testified that Progressive 'did not exercise the requisite care, diligence and prudence in its handling of the claims...'").

Here, Appellants' reliance on Mr. Kammer's expert report is unavailing, as Mr. Kammer has never provided sworn testimony or an affidavit verifying the opinions in his report. Therefore, the unsworn opinions of Mr. Kammer are

49

inadmissible hearsay and were not proper for consideration by the district court in ruling on GEICO's Motion for Summary Judgment.

The lack of any sworn testimony or affidavit from Appellants' expert witness is fatal to Appellants' argument that this Court should consider Mr. Kammer's opinions as creating a factual issue with regard to GEICO's claim handling. The district court could not have properly considered the unsworn opinions or expert report of Mr. Kammer, as unsworn statements do not meet the evidentiary requirements of summary judgment, and thus, cannot be considered by a district court. *See Bridges v. United States of America*, 2017 WL 3764244 (M.D. Fla. 2017). In *Bridges*, a plaintiff sought to support a partial summary judgment motion with a report rendered by the plaintiff's expert witness. *Id.* However, in striking the expert report from the summary judgment motion, the court specifically found that the plaintiff "has provided no deposition testimony to support the unsworn expert reports..." and "the Court cannot rely on their content when considering summary judgment." *Id.* at *2.

Furthermore, even if the district court were to consider the hearsay statements in Mr. Kammer's report, courts have consistently held that expert opinions do not create a genuine issue of material fact where an expert's testimony or affidavit fails to provide specific facts from the record to support the opinions. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 985 (11th Cir. 1985) ("a party may not avoid summary

judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations"); *see also Weiss v. Standard Ins. Co.*, 672 F.Supp.2d 1313 (S.D. Fla. 2009) (holding that the expert **affidavit** did not create genuine issues of material fact)(emphasis added); *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) (holding that an expert's **affidavit** did not create issues of disputed facts because the affidavit relied solely on unverified lay testimony)(emphasis added).

This Court in *Eres v. Progressive Am. Ins. Co*., 998 F.3d 1273, 1279 (11th Cir. 2021), was presented with similar arguments, where the trial court had previously entered summary judgment in favor of the insurer, Progressive, on a bad faith claim. On appeal, the appellant argued that the testimony of the appellant's insurance-industry expert created a factual issue, where the expert witness testified that Progressive's provision of a release was inconsistent with the standard of care of a reasonably prudent insurance adjuster. Nonetheless, the expert testimony did not create a factual issue precluding summary judgment. *Id*. In affirming summary judgment in favor of Progressive, this Court concluded that the appellant had "identified some ways that Progressive might improve its claims-processing practice" but had not set forth evidence to create any "possible inference of bad faith." *Id.*

51

Mr. Kammer's hearsay opinions do not identify ways of improving claim handling or identify any factual details to support the conclusory opinions. Nowhere in his report did Mr. Kammer ever address any new or otherwise different evidence pertaining to the duration of GEICO's investigation. [DE 153-5 at p. 8]. Appellants' expert solely opines, in conclusory fashion, that the length of the coverage investigation was not reasonable under the circumstances. The expert opinions expressed by Mr. Kammer in his report lack evidentiary support and do not create a genuine issue of material fact. If conclusory opinions in an expert report created an issue of material fact, then no case would ever be appropriate for resolution through summary judgment. *See Weiss*, 672 F.Supp.2d at 1320 ("The rules governing admissibility of expert testimony were 'not intended ... to make summary judgment impossible whenever a party has produced an expert to support its position.'") (quoting *Evers*, 770 F.2d at 986).

## CONCLUSION

The district court's Summary Judgment Order was properly entered in favor of GEICO because the undisputed material facts establish that GEICO, at all times, handled the subject claim in good faith consistent with its duties under Florida law: GEICO diligently and thoroughly investigated the unique coverage issue; GEICO conducted a very thorough and difficult investigation involving factors beyond its control; despite conflicting case law on a very difficult coverage issue, GEICO made

52

the decision to afford coverage to settle the claims made by the Bennars; GEICO sought to protect its insured from all potential claims by coordinating a global settlement conference consistent with its duty under Florida law; and GEICO persisted in reissuing policy limit tenders to Attorney Silva and the Bennars despite their refusal to participate in settlement discussions. Under these undisputed facts, no reasonable jury could conclude that GEICO acted in bad faith.

Separately, summary judgment was properly entered in GEICO's favor because the undisputed material facts demonstrate that GEICO was deprived of a reasonable opportunity to settle. Attorney Silva and the Bennars never demanded or even requested policy benefits to settle the claim of DEVIN BENNAR, and Attorney Silva waited until the day before the settlement conference to advise GEICO that he and his clients refused to attend and refused to negotiate a settlement. Even when GEICO issued payment for the full policy limits directly to Attorney Silva's office, Attorney Silva repeatedly rejected GEICO's efforts to settle the bodily injury claim of DEVIN BENNAR. Nor do the affidavits submitted by Appellants create a factual issue in this regard, because, even if accepted as true, a "few week" deadline that was never conveyed to GEICO during its coverage investigation does not constitute a "reasonable" opportunity to settle.

Furthermore, the district court's Summary Judgment Order is well-supported by the legal authority of *Montanez*, *Mesa*, *Valle*, and *Deary*, all of which were

affirmed by this Court. Conversely, Appellants have failed to present any legal authority that is on point and sufficient to contest the district court's Order on appeal. Similarly, Appellants have not raised any genuine issues of fact and have not pointed to any specific record evidence that would justify reversal of the district court's summary judgment. For the foregoing reasons, the district court's Summary Judgment Order that is the subject of this appeal must be affirmed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of GEICO GENERAL INSURANCE COMPANY's Answer Brief has been furnished to the following in the manner specified this 12th day of May 2025:

**Stephen Marino, Jr., Esq.**
**Michal Meiler, Esq.**
VER PLOEG & MARINO, P.A.
100 S.E. Second Street, 30th FL
Miami, FL 33131
smarino@vpm-legal.com
mmeiler@vpm-legal.com
Counsel for Appellants

**Elliot B. Kula, Esq.**
**William D. Mueller, Esq.**
Kula & Associates, P.A.
11900 Biscayne Blvd.
Suite 310
Miami, FL 33181
elliot@kulalegal.com
william@kulalegal.com
Counsel for Appellants

**Matias R Dorta, Esq.**
**Gonzalo R. Dorta, Esq.**
DORTA LAW
334 Minorca Avenue
Coral Gables, Florida 33134
mrd@dortalaw.com

grd@dortalaw.com
jgonzalez@dortalaw.com
Counsel for Zabryna Hernandez Acuna,
Monika Acuna and Jesse Acuna

**Luis O. Chiong**
16975 SW 83rd Court
Palmetto Bay, FL 33157
Pro Se

/s/RICHARD A. WELDY
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
**RICHARD A. WELDY**
Florida Bar No.: 0111811
rweldy@flalawyer.net
Young, Bill, Boles, Palmer,
Duke & Thompson, P.A.
One Biscayne Tower, Suite 3195
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
*Attorneys for GEICO*

56

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief uses Times New Roman 14-point typeface containing 12,866 words, within the 13,000-word limitation under the Rule.

/s/RICHARD A. WELDY
**RICHARD A. WELDY**
Florida Bar No.: 0111811
rweldy@flalawyer.net
Young, Bill, Boles, Palmer,
Duke & Thompson, P.A.
One Biscayne Tower, Suite 3195
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
*Attorneys for GEICO*