IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24–12228–A

---

EILEEN GONZALEZ and FRANK BENNAR, Individually,
and as parents and natural guardians of DEVIN BENNAR, a minor, and
ZABRYNA HERNANDEZ ACUNA, individually,

*Plaintiffs-Appellants*,

v.

GEICO GENERAL INSURANCE COMPANY,

*Defendant-Appellee.*

---

---

REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

Stephen A. Marino, Jr.
Michal Meiler
VER PLOEG & MARINO, P.A.
100 S.E. Second St., Ste. 3300
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile (305) 577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com

Elliot B. Kula
William D. Mueller
KULA & ASSOCIATES, P.A.
12000 Biscayne Blvd., Ste. 221
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com
william@kulalegal.com

*Co-Counsel for Appellants*

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

## CERTIFICATE OF INTERESTED PERSONS

Plaintiffs-Appellants, Eileen Gonzalez and Frank Bennar, individually, and as parents and natural guardians of Devin Bennar, a minor, and Zabryna Hernandez Acuna, pursuant to Federal Rule of Appellate Procedure 26 and Eleventh Circuit Rule 26.1, file their Certificate of Interested Parties and Corporate Disclosure Statement and certifies that the following persons and entities have or may have an interest in the outcome of this case:

Acuna, Jesse

Acuna, Monika Caridad

Bennar, Devin

Bennar, Frank

Berkshire Hathaway, Inc.

Chiong, Luis O.

Dorta Law

Dorta, Gonzalo R., Esq.

Dorta, Matias R., Esq.

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

## CERTIFICATE OF INTERESTED PERSONS

## AND

## CORPORATE DISCLOSURE STATEMENT
(Continued)

Duke, Adam, Esq.

GEICO General Insurance Company

Gonzalez, Eileen

Government Employees Insurance Company

Hernandez Acuna, Zabryna

Kula & Associates, P.A.

Kula, Elliot B., Esq.

Layne, Paul J., Esq.

Marino, Jr., Stephen A., Esq.

Meiler, Michal, Esq.

Mueller, William D., Esq.

Silva & Silva, P.A.

Silva, Carlos E., Esq.

Torres, Edwin G., Hon.

*EILEEN GONZALEZ, ET AL. V. GEICO GEN. INS. CO.*

## CASE NO. 24-12228-A

**CERTIFICATE OF INTERESTED PERSONS**

**AND**

## CORPORATE DISCLOSURE STATEMENT
(Continued)

Veliz, Derek L., Esq.

Ver Ploeg & Marino, P.A.

Weldy, Richard A., Esq.

Williams, Kathleen M., Hon.

Young, Bill, Boles, Palmer, Duke & Thompson, P.A.

## CORPORATE DISCLOSURE STATEMENT

Upon information and belief, Appellee, GEICO General Insurance Company, is a wholly owned subsidiary of Government Employees Insurance Company, which is a wholly owned subsidiary of GEICO Corporation, which in turn is wholly owned by Berkshire Hathaway, Inc., a publicly traded company.

/s/ Elliot B. Kula

Elliot B. Kula

C-3 of C-3

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CITATIONS ................................................................................ ii

SUMMARY OF ARGUMENT .........................................................................1

ARGUMENT ...............................................................................................2

    I.    THE DISTRICT COURT ERRED RESOLVING THE
        ISSUE OF BAD FAITH AS A MATTER OF LAW...........................2

        A.    The Bad Faith Standard. ..............................................2

        B.    Genuine Issue of Material Fact as to Whether
                GEICO Reasonably Complied with the
                Affirmative Duty to Initiate Settlement
                Negotiations When Significant Injuries Were
                Present. .....................................................................4

        C.    The District Court Did Not Objectively Evaluate
                the Totality of the Circumstances When it
                Weighed the Plaintiffs' Evidence and Dismissed
                Expert Testimony on Summary Judgment................................15

        D.    The District Court Erred by Comparing the
                Totality of These Circumstances to Inapposite
                Opinions While Ignoring Newer, More Similar,
                Binding Precedent. ....................................................21

CONCLUSION .........................................................................................22

# TABLE OF CITATIONS

**Page**

*Cases*

*Aldana v. Progressive Am. Ins. Co.*,
828 Fed. Appx. 663 (11th Cir. 2020)......................................................16

*Am. Builders Ins. Co. v. S.-Owners Ins. Co.*,
71 F.4th 847 (11th Cir. 2023) ...............................................................11

*Baldassini v. State Farm*,
545 Fed. Appx. 842 (US App 11th Cir. 2013)........................................7

*Baxter v. Santiago-Miranda*,
121 F.4th 873 (11th Cir. 2024) ..............................................................20

*Boston Old Colony Ins. Co. v. Gutierrez*,
386 So. 2d 783 (Fla. 1980).....................................................................18

*Campbell v. Gov't Emps. Ins. Co.*,
306 So. 2d 525 (Fla. 1974).......................................................................3

*DuBay v. King*,
844 Fed. Appx. 257 (11th Cir. 2021).....................................................20

*Farinas v. Fla. Farm Bureau Gen. Ins. Co.*,
850 So. 2d 555 (Fla. 4th DCA 2003)......................................................14

*Fernandez v. Seaboard Marine LTD.*,
135 F.4th 939 (11th Cir. 2025) ..............................................................20

*Fireman's Fund Ins. Cos. v. Pearl*,
540 So. 2d 883 (Fla. 4th DCA 1989).......................................................7

*Harvey v. GEICO Gen. Ins. Co.*,
259 So. 3d 1 (Fla. 2018)............................................... 11, 14, 16, 17

*Ilias v. USAA Gen. Indem. Co.*,
61 F.4th 1338 (11th Cir. 2023) ................................................. 11, 14

# TABLE OF CITATIONS
(Continued)

**Page**

*In re Advanced Telecomm. Network, Inc.*,
  618CV1186ORL28GJK, 2018 WL 4627669 (M.D. Fla. Sept. 26, 2018)...........20

*In re Lynch*,
  755 Fed. Appx. 920 (11th Cir. 2018)..................................................................18

*Jones v. UPS Ground Freight*,
  683 F.3d 1283 (11th Cir. 2012) .........................................................................20

*Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*,
  135 F.4th 961 (11th Cir. 2025) .......................................................................3, 9

*Macuba v. Deboer*,
  193 F.3d 1316 (11th Cir. 1999) ................................................................... 19, 20

*Maldonado v. First Liberty Ins. Corp.*,
  546 F. Supp. 2d 1347 (S.D. Fla. 2008)...............................................................18

*Mesa v. Clarendon Nat. Ins. Co.*,
  799 F.3d 1353 (11th Cir. 2015) .........................................................................21

*Montanez v. Liberty Mut. Fire Ins. Co.*,
  824 Fed. Appx. 905 (11th Cir. 2020)..................................................................21

*Moore v. GEICO Gen. Ins. Co.*,
  633 Fed. Appx. 924 (11th Cir. 2016)..................................................................21

*Penn Nat. Ins. v. HNI Corp.*,
  245 F.R.D. 190 (M.D. Pa. 2007).........................................................................19

*Powell v. Prudential Prop. & Cas. Ins. Co.*,
  584 So. 2d 12 (Fla. 3d DCA 1991) ............................................................... 12, 16

*Shuster v. S. Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Tr.*,
  591 So. 2d 174 (Fla. 1992)..................................................................................14

*United States v. Siddiqui*,
  235 F.3d 1318 (11th Cir. 2000) .........................................................................18

iii

# TABLE OF CITATIONS
### (Continued)

**Page**

*Valle v. State Farm Mut. Auto. Ins. Co*,
  394 Fed. Appx. 555 (11th Cir. 2010)...............................................................21

*Vest v. Travelers Ins. Co.*,
  753 So. 2d 1270 (Fla. 2000)...............................................................................3

## *Rules*

Fed. R. Civ. P. 26 ............................................................................. 18, 19

Fed. R. Evid. 702 ..................................................................................21

Fed. R. Evid. 801 ..................................................................................19

Fed. R. Civ. P. 56 ..................................................................................18

**SUMMARY OF ARGUMENT**

Appellee's answer brief shuts its eyes to both the record evidence and Florida's bad faith standard in attempting to defend an indefensible summary judgment ruling.  Like a homeowner comparing paint swatches at a hardware store, GEICO attempts to liken the facts here to cases where bad faith claims have been resolved on summary judgment.  But, tough luck GEICO, the shades don't match. The totality of the circumstances here, when viewed in the light most favorable to Appellants, shows a situation where GEICO conducted an objectively unreasonable 69-day coverage investigation that its own counsel resolved in a single day using existing precedent, failed to act with the urgency required when facing a catastrophic "ticking time bomb" injury claim, and imposed unnecessary procedural delays through a global settlement conference that served no substantive purpose—all while Appellee's insured faced mounting exposure to an inevitable excess judgment.

GEICO's primary argument—that it conducted a reasonable coverage investigation—is contradicted by its own records.  The undisputed evidence shows GEICO's in-house counsel resolved the coverage question in a single day using existing Florida precedent, without reference to any of the physical characteristics GEICO spent 69 days investigating.  GEICO cannot claim the coverage issue was "inherently complex" when its own attorney resolved it immediately using case law that was available from day one.

GEICO's "no reasonable opportunity to settle" argument ignores the critical distinction between catastrophic and minor injury claims under Florida's "ticking

financial time bomb" doctrine. While GEICO successfully settled the siblings' minor injury claims for $5,000 each, it failed to appreciate its heightened duty regarding Devin's traumatic brain injury claim that clearly exceeded policy limits. GEICO failed to act with appropriate urgency on the catastrophic claim that posed the real excess judgment risk—and that risk was realized due to GEICO's delay.

Lastly, GEICO's procedural arguments regarding the affidavits and expert testimony are both legally incorrect and factually misplaced.

Under the proper totality of circumstances analysis, these facts must be heard by a jury to resolve the issue of GEICO's bad faith, not by the District Court on summary judgment.

## ARGUMENT

### I. THE DISTRICT COURT ERRED RESOLVING THE ISSUE OF BAD FAITH AS A MATTER OF LAW.

#### A. The Bad Faith Standard.

The parties generally agree that Florida's bad faith standard requires an assessment of the totality of the circumstances involved in the insurer's claim handling process. *Compare* Brief of Plaintiffs-Appellants ("IB") at 15-18 *with* Appellee's Answer Brief on Appeal ("AB") 18-24. But GEICO mistakes the Appellants' position when it states that the Appellants "seemingly refuse to acknowledge the fact that Florida courts, and federal courts applying Florida law, have consistently granted summary judgment in favor of insurers in bad faith cases like this one involving an insurer's handling of multiple claims." AB at 18-19.

2

Summary judgment may be available in a narrow grouping of bad faith cases, but not so here.

This Court recently acknowledged the propensity of these bad faith cases arising out of Florida law to be resolved not through summary judgment, but by a trier of fact. *See Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*, 135 F.4th 961, 968 (11th Cir. 2025). In *Kinsale*, the Court's latest word on Florida bad faith actions, the Court stated that "[w]hether the totality of the circumstances indicates that an insurer acted in bad faith usually is an issue of fact to be determined by a fact-finder." *Id*. (internal citations to *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) omitted for clarity). And the Court acknowledged that Florida law's modus operandi has consistently been that "[b]ad faith in a factual situation of this kind is not a matter of law but is a question of fact for the jury." *Id.* (citing to *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974)).

*Kinsale* recognizes that where the critical bad faith elements are at play—the "possibility" of clear liability, a "ticking financial time bomb", catastrophic injuries—"[a]ny delay in making an offer ... even where there was no assurance that the claim could be settled could be [*and should be*] viewed by a fact finder, as evidence of bad faith." 135 F.4th at 975-76 (citations omitted). That means it is "for the jury to decide whether the insurer failed to act in good faith with due regard for the interests of the insured." *Id*. (citations omitted).

3

**B. Genuine Issue of Material Fact as to Whether GEICO Reasonably Complied with the Affirmative Duty to Initiate Settlement Negotiations When Significant Injuries Were Present.**

**(1) GEICO's Coverage Determination Was Immediately Reversed by In-House Legal Counsel.**

GEICO characterizes Appellants' position on the underlying coverage investigation as embodying a "short-sighted and retroactive view" of the issues GEICO had to examine. AB at 30. The way GEICO puts it, the Appellants are engaging in a "retrospective attempt to diminish the complexity and necessity of the coverage investigation" which was "recognized by the contradictory decisions on the Declaration Judgment Action." AB at 30-31. In fact, the opposite is true. The Appellants' position is supported by *contemporaneous* evidence: GEICO's own legal counsel recognized coverage availability through legal analysis that was entirely independent of the facts GEICO spent 69 days investigating.

In truth, the record evidence relied on by the Appellants lays bare three critical flaws in GEICO's characterization of its own coverage investigation:

- First, GEICO's 69-day coverage investigation was undone in a single day by in-house counsel using existing Florida law;

- Second, the physical characteristics GEICO spent months investigating played no role in counsel's coverage determination; and

- Third, the District Court's subsequent declaratory judgment ruling cannot retroactively justify GEICO's delay in consulting its own legal department.

These are three facts upon which a reasonably jury can conclude that GEICO acted in bad faith.

<u>FACT #1</u>
**THE SUMMARY JUDGMENT EVIDENCE DEMONSTRATES THAT
GEICO'S COVERAGE INVESTIGATION WAS UNDONE IN A SINGLE DAY**

GEICO asserts that the Appellants failed to cite "testimony or evidentiary support" for the contention that its investigation was "undone in a single day" by in-house counsel.  AB at 31.  That's not so.

Contrary to GEICO's assertions, the record clearly shows that GEICO's in-house counsel resolved the coverage issue in a single day using existing Florida precedent.  On May 11, 2017, immediately following GEICO's roundtable meeting where coverage was initially denied, in-house attorney Nadine Raley reversed that decision and determined coverage existed.  DE:141-4 at GLC 00651-00655.  That was documented in the claim's log as follows:

> [W]e have received Ms. Raley's research into coverage for this claim involving a golf cart driven by our Insured's minor child and not owned by our named insureds…. Further to my discussion yesterday with Sheri, Tina and George, I wanted to pass along some research I did about golf carts. According to the casas below, Courts in Florida look to the policy language and definitions as to whether golf carts are afforded coverage. As you know, the applicable A30 [policy] defines a non-owned auto as a "private passenger, farm or utility auto or trailer"[.] A private passenger auto is defined as "a fourwheel private passenger, station wagon or jeep-type auto," The word "auto" is not defined anywhere in our policy. According to the cases below, by not defining "auto" the term becomes ambiguous and must be construed against the insurer. Therefore, it is CHOL's opinion that we should afford liability coverage in this matter….

*Id*.  The GEICO employee who reviewed the lawyer's research, was "in agreement with [her] conclusions" and suggested that GEICO "afford liability coverage" to the

5

Bennars. *Id*. The same evidence shows that the previous day GEICO had taken the position that no coverage was available. DE:141-4 at GLC 000656.

Which is to say, the record evidence—and reasonable inferences to be drawn therefrom—confirm that GEICO's coverage investigation was undone in a single day by GEICO's in-house legal counsel. AB at 31.[1]

**FACT #2**
**GEICO'S INVESTIGATION DID NOT**
**INFORM ITS IN-HOUSE COUNSEL'S ANALYSIS**

GEICO next claims that in-house counsel was only able to come to such a conclusion "*because of* the thorough factual investigation conducted by GEICO's claims department pertaining to the features and nature of the golf cart, specific use of the golf cart, ownership of the golf cart, and other essential facts that required a detailed investigation." AB at 32 (emphasis in original). The record speaks to that as well, and it does not lend it any support.

In-house counsel Nadine Raley's coverage determination hinged entirely on *legal* analysis of policy language and existing case law—not on the 69-day investigation into irrelevant physical characteristics of the golf cart. DE:141-4 at GLC 00651-00655. The letter referenced in the log outlining Ms. Raley's analysis

---

[1] Later in its Brief, GEICO cites that the "Appellants failed to comply with Local Rule 56.1(b)(2) by not providing specific evidentiary citations to the factual averments in GEICO's Statement of Material Facts. [DE 173 at p. 2, n. 3]; [DE 141; DE 152]." AB at 34-35. And then GEICO accuses Appellants of "resort[ing] to the same tactic of claiming that there are factual issues, without identifying specific facts or record evidence in support." AB at 35. It is entirely unclear to which factual statements GEICO refers to—it doesn't indicate what facts Appellants are injecting into the appeal. There are none. The facts relied on in the Opening Brief and this Brief are undisputed and derived entirely from the summary judgment evidence.

6

makes no reference to any of the physical characteristics that GEICO spent months investigating.   DE:141-4 at GLC00651-00655.   Instead, the analysis focused exclusively on policy interpretation:

> "According to the cases below, Courts in Florida look to policy language and definitions as to whether golf carts are afforded coverage... The word 'auto' is not defined anywhere in our policy... by not defining 'auto' the term becomes ambiguous and must be construed against the insurer."

*Id*.   Counsel's conclusion that GEICO "should afford liability coverage in this matter" was based solely on this legal analysis.  *Id*.

GEICO's subsequent communication to outside counsel confirms this purely *legal* basis for its coverage determination.  DE:141-12 at 2.  In explaining its decision to "afford liability coverage," GEICO cited only policy language and case law: "we have agreed to afford liability coverage in this matter since the word 'auto' is not defined anywhere in our policy.  Also we considered *Fireman's Fund Ins. Cos. v. Pearl*, 540 So. 2d 883 (Fla. 4th DCA 1989) and *Baldassini v. State Farm*, 545 Fed. Appx. 842 (US App 11th Cir. 2013) in our decision making."  *Id*.

Notably, these cases cited by GEICO were existing legal precedent that could have been consulted immediately upon receipt of the claim and knowledge a golf cart—regardless of its characteristics—was involved in the accident.  There is no indication in these communications that the coverage determination relied on any of the extensive factual information collected about the golf cart's physical characteristics, registration status, or ownership details.

Viewed in a light most favorable to the nonmoving party (Devin), the record demonstrates that GEICO's coverage investigation was primarily directed at those very irrelevant characteristics that had no bearing on the ultimate coverage determination.  GEICO spent 69 days investigating whether the golf cart had headlights (not relevant), taillights (not relevant), signal lights (not relevant), and rearview mirrors (not relevant) (DE:141-4 at GLC 00698-00699), whether it was gas-powered or electric (not relevant) (*id*. at GLC 00697-00698), and other physical attributes that played no role in Ms. Raley's legal analysis that resolved the coverage question in a single day.  That means the most "unique circumstances that hindered GEICO's coverage investigation" was not that the golf cart was impounded by the Miami-Dade Policy Department but rather that GEICO refused consult with its legal department at the outset of the claim.  AB at 33.  If it had, GEICO would have realized that its plan to engage in a protracted and detailed physical investigation of the golf cart was meaningless given Ms. Raley's straightforward legal analysis, and the coverage question could have been resolved immediately, allowing for timely settlement of the Bennars' catastrophic injury claim.

### FACT #3
### THE DISTRICT COURT'S SUBSEQUENT DECLARATORY ACTION JUDGMENT PLAYS NO ROLE HERE

Finally, GEICO repeatedly refers to the District Court's earlier declaratory judgment ruling as proof that there was an "inherently complex and novel issue" of coverage in the case that warranted a protracted and investigation.  AB at 31.  That earlier action (which was later reversed by this Court) plays no role in determining

8

what GEICO objectively knew, or should have known, at the time it was handling the Bennars' claim. The prior judicial proceedings don't ratify either sides' point regarding the complexity (or lack thereof) of the coverage issue.

Under Florida law, the appropriate question is not whether subsequent judicial determinations prove or disprove complexity, but rather what GEICO objectively knew at the time of its claims handling. *See Kinsale Ins. Co.*, 135 F.4th at 969 (stating that an "evaluation of bad faith is an objective one, based on what the insurer knew at the time, as well as what the insurer reasonably should have known"). GEICO cannot point to what the District Court ruled after the fact to recharacterize the reasonableness of its own actions and the conviction of what their own agents knew at the time of the process of the claim.

GEICO's contemporaneous actions belie its current characterization of the coverage issue as inherently complex. After its in-house counsel's analysis, GEICO expressed complete confidence in its coverage determination, informing its insureds that the policy limits were being made available and would "never be withdrawn." DE:141-13. GEICO cannot now claim the coverage issue was so complex as to justify a 69-day investigation when its counsel resolved the matter in a single day using existing Florida law and using none of the facts uncovered by GEICO's other agents. GEICO knew, or reasonably should have known, what was covered under its own Policy, but delayed in resolving the claim anyway.

The speed and certainty with which GEICO's attorney resolved the coverage question—after claims handlers spent more than two months investigating irrelevant

9

features of the golf cart—is compelling evidence that GEICO's delay was objectively unreasonable under the totality of the circumstances.

### (2) The Severe Injuries Invoked The "Ticking Time Bomb" Doctrine.

GEICO claims that it was deprived of a "reasonable opportunity to settle" Devin's claims and is thus entitled to summary judgment on a different basis.[2]  In so claiming, GEICO argues that the facts demonstrate that Attorney Silva unreasonably rejected GEICO's check to Devin for the policy limits on June 14th as "untimely" because he was later willing to settle Savanna and Isabella's claims:

> Particularly interesting is Attorney Silva's claim that GEICO's June 14th hand-delivered check for the $20,000 policy limits was "untimely", considering that GEICO was still able to settle the claims of Savannah and Isabella Bennar for the $10,000 per person limit, even after the settlement tender was initially rejected by Attorney Silva as "untimely." Simply put, Attorney Silva's initial position was that the tender was "untimely" as to Savannah, Isabella, and DEVIN BENNAR, but that did not preclude a later settlement of Savannah and Isabella's claims. Yet, these claims all arose from the same loss, within the same family, the same facts, and the same timing of the settlement tender. The only distinction between these claims is the severity and the overall value of DEVIN BENNAR's claim in relation to the minimal policy limits available.

AB at 37 (citations to record omitted).  But there is a clear distinction between Savannah, Isabella, and Devin's claims.  Devin's were serious, and invoked the ticking time bomb doctrine, while the others' were not.

---

[2] Although pitched by GEICO as a different "basis" for affirmance, the argument is part and parcel to the overall discussion of whether GEICO acted in bad faith.  It is not an alternate judicial ruling that can be affirmed separate and apart from the Final Judgment currently on review.

GEICO's argument fundamentally misunderstands Florida's bad faith jurisprudence and the "ticking financial time bomb" doctrine. The record clearly establishes a stark distinction between the claims of the Bennar children. Savannah and Isabella suffered "bruising and soft tissue injuries"—injuries far less grievous than those suffered by Devin. DE:141 at 2; DE:141-4 at 7-8. Devin, by contrast, suffered a traumatic brain injury, became confined to a wheelchair, and required feeding tubes. DE:16 at 6; DE:51 at 9-10; DE:113 at 2. Florida law recognizes this distinction is meaningful and critical in determining an insurer's duties.

Under the "ticking financial time bomb" doctrine, the severity of injuries directly correlates to the urgency required in an insurer's response. *See Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 855 (11th Cir. 2023). As this Court recognized in *Ilias*, "where the financial exposure to the insured is a ticking financial time bomb and suit can be filed at any time, any delay in making an offer ... even where there [i]s no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1345 (11th Cir. 2023).

The settlement of Savannah and Isabella's minor injuries for $5,000 each—injuries that posed no meaningful risk of excess judgment—cannot be compared to GEICO's handling of Devin's catastrophic claim. DE:141-4 at GLC 00575-00576. Florida law imposes a heightened duty of urgency specifically for catastrophic claims that clearly exceed policy limits precisely because delay in these cases exposes the insured to substantial excess liability. *See Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018).

11

GEICO's argument that all claims "arose from the same loss, within the same family, the same facts, and the same timing of the settlement tender" (AB at 37) ignores the fundamental principle that the duty to initiate settlement negotiations is most urgent where "injuries [are] so serious that a judgment in excess of the policy limits is likely…." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991).  Only Devin's claim carried this risk of excess judgment— which ultimately materialized in the form of an $18 million verdict (to which GEICO agreed to prior to its entry).

Consider the timeline of events that precipitated the excess judgment:

- **March 3, 2017:** GEICO received Attorney Silva's letter of representation notifying them of the claim (DE:141-3);

- **April 27, 2017:** The Bennars filed suit against Ms. Acuna in the 11th Judicial Circuit because GEICO had not engaged in settlement negotiations and had continued to issue reservation of rights letters (DE:113 at 3; DE:141 at 10);

- **May 11, 2017:** GEICO's in-house counsel finally made the decision to afford coverage (DE:141-4 at GLC 00651-00655).

The lawsuit that led to the agreed $18 million judgment was filed on **day 55** of GEICO's 69-day investigation—**14 days before** GEICO completed its misguided investigation and consulted with their in-house counsel who, in a single day, confirmed coverage.  The timeline is devastating to GEICO's position because it shows that: (i) the lawsuit was filed directly as a result of GEICO's delay; (ii) had GEICO acted promptly (as their own counsel later demonstrated could be done in a

single day), the lawsuit never would have been filed; (iii) GEICO's unnecessary delay directly caused the very excess judgment they were supposed to protect their insured against.

Rather than reinforcing GEICO's position, the settlement of the minor injury claims only highlights GEICO's failure to appreciate its distinct obligations regarding Devin's catastrophic claim.

### (3) Geico's Insistence on A Global Settlement Conference Undermined Settlement.

GEICO attempts to justify its delay in settlement negotiations by characterizing its pursuit of a global settlement conference as reasonable and consistent with Florida law. AB at 28-29; AB at 36-37. GEICO's actions contradict this position. When Attorney Silva informed GEICO he would not attend the global settlement conference, GEICO issued payment for the full policy limits directly to Attorney Silva's office the next day after the scheduled conference. DE:141-16; DE:141-4 at GLC 00615.

The fact that GEICO sent the policy limits check to Attorney Silva's office one day after learning he would not participate in the conference reveals that GEICO understood its obligation to tender limits promptly but chose to condition that tender on an unnecessary formality. GEICO clearly possessed all the information needed to issue payment and could have done so immediately upon completing its coverage investigation. GEICO instead imposed an additional procedural hurdle that, as the objective facts show, served no substantive purpose in its decision-making process. Such conduct is inconsistent with an insurer's duty to act "with the same haste and

13

precision as if it were in the insured's shoes" to avoid an excess judgment. *Harvey*, 259 So. 3d at 7. GEICO's insistence on the formality of a global settlement conference, despite knowing of Devin Bennar's catastrophic injuries and the likelihood of an excess judgment, cannot be reconciled with its duty to act with urgency to protect its insured.

That's another stress point favoring reversal of the summary judgment in favor of a trial. *See Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 561 (Fla. 4th DCA 2003) (holding that the question of whether an insurer's claims settlement strategy was reasonable is reserved for the jury). While insurers must avoid "indiscriminately settl[ing] with one or more of the parties for the full policy limits," *Ilias*, 61 F.4th at 1346 (citing *Shuster v. S. Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Tr.*, 591 So. 2d 174, 177 (Fla. 1992)), this principle does not justify unnecessary delay when liability and damages clearly favor a particular claimant like Devin.

Here, as in *Ilias*, there is "[n]o evidence in the record suggests that a potential claim by [the other claimants] had any impact on [GEICO's] decision whether to settle with [Bennar]." *Ilias*, 61 F.4th at 1346. GEICO's investigation confirmed through newspaper articles that while Devin suffered catastrophic injuries requiring hospitalization, the other children were merely "treated and released or not injured." DE:141-4 at GLC 684-686. The record shows GEICO knew Nancy Gonzalez had already received benefits from her own insurer and that her insurer had tendered its limits to the Bennars. DE:141-4 at GLC 375-376. And GEICO acted on that

knowledge when it immediately tendered the policy limits to attorney Silva despite his failure to attend the global settlement conference.

A reasonable jury could find that GEICO's insistence on a global settlement conference rather than promptly tendering the $10,000 per-person limit directly to Devin constituted bad faith that exposed its insured to an excess judgment that could have been avoided.

**C.  The District Court Did Not Objectively Evaluate the Totality of the Circumstances When it Weighed the Plaintiffs' Evidence and Dismissed Expert Testimony on Summary Judgment.**

On this issue, GEICO argues that the "Appellants' contention that the district court purportedly disregarded, or did not give enough weight to, the affidavits" of Attorney Silva and Eileen Gonzalez is "entirely false." AB at 46. As proof, GEICO points out that the Magistrate's Report and Recommendation "clearly states that the court considered the affidavits submitted by Appellants 'in the light most favorable to the Bennars.'" *Id*. That proof unravels when the other elements of that same order are scrutinized.

Endeavoring to view the Appellants' evidence "in the light most favorable to the Bennars", the Magistrate characterized their uncontested affidavits as "self-serving", disregarded them, and made impermissible credibility determinations reserved for the jury. DE:173 at 18 ("And aside from the self-serving affidavits of Eileen Gonzalez and Attorney Silva, there is no evidence to suggest that the Bennars ever considered settling Devin's claim against the Acuna policy for that amount."). Clearly, the mandate to view the Bennars' evidence in a favorable light was

15

disregarded; in practice, the Magistrate looked at the Bennars' affidavits in the most skeptical light.

As argued in the Opening Brief, the District Court's refusal to "adopt this characterization of the affidavits" did not ameliorate the concern. DE:180 at 1. Had the affidavits of Eileen Gonzalez and Attorney Silva been accepted as true and viewed in the light most favorable to the Bennars, it would be impossible to conclude that the "balance of the record suggests that $10,000 was far below what they would have been willing to accept." DE:173 at 18.

GEICO takes a different view of the evidence and suggests that because Gonzalez and Silva had established an "unspoken settlement deadline," the evidence should be disregarded. AB at 46. But GEICO's characterization misses the applicable legal framework governing catastrophic injury cases. Under Florida's "ticking financial time bomb" doctrine, where "liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely," it is the "insurer"—not the insured—that "has an affirmative duty to initiate settlement negotiations." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018) (citing *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991)). This duty exists precisely because such cases present urgent circumstances where "even brief delays in attempting settlement may constitute evidence of bad faith." *Aldana v. Progressive Am. Ins. Co.*, 828 Fed. Appx. 663, 670 (11th Cir. 2020). The affidavits establish that GEICO was facing exactly this scenario—clear liability and catastrophic injuries that virtually guaranteed an excess judgment absent prompt settlement action.

16

Significantly, when Attorney Silva ultimately rejected GEICO's belated tender, his stated reason was not that the amount was insufficient, but that the tender was "defective and untimely."  DE:141-18; DE:141-22.  This rejection aligns precisely with the timeline established in the Gonzalez and Silva affidavits, confirming that a timely tender within the first few weeks would have been accepted. Viewed in the light most favorable to Appellants, the evidence demonstrates not an "unspoken deadline," but rather GEICO's failure to meet its affirmative legal obligation to act with the urgency required when facing a ticking financial time bomb.  The distinction is crucial: while parties generally have no duty to settle absent a demand, insurers facing catastrophic injury cases have an affirmative obligation to initiate settlement negotiations precisely because of the urgent circumstances such cases present.  *See Harvey*, 259 So. 3d at 7.

And GEICO's attempt to excuse its affirmative duty because it "was still in the middle of its coverage investigation" during the critical first few weeks after the claim was filed ignores the evidence that GEICO's investigation was unnecessarily protracted and focused on irrelevant considerations.  AB at 47.  An insurer cannot escape its affirmative duty to settle catastrophic injury cases by pointing to its own dilatory investigation practices.  That would, effectively, allow an insurer to create its own defense to a bad faith claim by unnecessarily prolonging a coverage investigation that could and should have been resolved promptly.  *See Harvey*, 259 So. 3d at 7 (requiring insurers to act "with the same haste and precision as if it were in the insured's shoes"). The consequences of GEICO's unreasonably delayed coverage determination—including the loss of a settlement opportunity that the

17

evidence shows existed—cannot be imputed to the Bennars or used to excuse GEICO's failure to act with the urgency required in ticking time bomb scenarios.[3]

As to the Bennars' expert report from Ronald Kammer, an attorney with over 40 years of experience in insurance coverage disputes who detailed how GEICO's delayed resolution of the coverage issue violated its good faith obligations, GEICO argues it was hearsay and properly excluded on summary judgment.  AB at 48-50. Not only was that argument not presented below (and thus not preserved), but caselaw is resoundingly against the false distinction GEICO makes here.

First, under Federal Rule of Civil Procedure 56, a party may object to material cited in support of or opposition to a motion for summary judgment on the grounds that it "cannot be presented in a form that would be admissible in evidence."  Such objections must be timely raised to preserve the issue for consideration by the Court. *See In re Lynch*, 755 Fed. Appx. 920, 924 (11th Cir. 2018); *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).  GEICO did not object to Krammer's expert report below as required under Rule 56 and this Court's precedent, and thus the argument is waived for purposes of summary judgment and this appeal.

Second, Federal Rule of Civil Procedure 26 requires that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  To make a proper disclosure, parties must, by the deadline,

---

[3] The cases GEICO cites for the proposition that insurers have a duty to investigate claims do not support the notion that insurers may conduct unnecessarily protracted investigations while catastrophic injury claimants face mounting damages.  *See Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980); *Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008), *aff'd*, 342 Fed. Appx. 485 (11th Cir. 2009).

disclose the identity of their experts "accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). This written report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and it must be "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). There is no obligation under Rule 26 for the report to be notarized or otherwise sworn to by the witness. *See Penn Nat. Ins. v. HNI Corp.*, 245 F.R.D. 190, 193 (M.D. Pa. 2007) ("The practical effect of a[n] [expert] designation is ... to bring an expert and his report within the universe of material that is discoverable by all parties and, generally, admissible at trial.").

Third, GEICO's classification of an expert report as hearsay because it is not sworn to is a false dichotomy. Whether evidence constitutes hearsay does not turn on whether it is sworn or unsworn, but rather on whether it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Under this definition, both sworn affidavits and unsworn expert reports constitute hearsay when offered for the truth of the matters asserted. Yet both are routinely considered by courts on summary judgment when they comply with the applicable procedural requirements.

That brings us to the fourth and final point, expert reports are routinely considered on summary judgment. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (footnote omitted) (internal quotation marks omitted). Nevertheless, "a district court may consider a hearsay statement in passing

19

on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1323 (internal citations omitted). The most obvious way that hearsay statements can be reduced to admissible form is to have the hearsay declarant—here, Mr. Krammer—testify directly to the matter at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012). That puts expert reports (not sworn to) and expert affidavits (sworn to) on equal footing.

"It is settled law in the Eleventh Circuit that an expert report can be used to create a genuine issue of material fact that precludes summary judgment…. While a party may challenge the admissibility of an expert's report in accordance with the evidence rules, it may not, on a motion for summary judgment, ask a court to evaluate the expert's credibility or ignore the expert's evidence altogether." *In re Advanced Telecomm. Network, Inc.*, 618CV1186ORL28GJK, 2018 WL 4627669, at *4 (M.D. Fla. Sept. 26, 2018). The proof is in the pudding: it is commonplace for expert reports to be considered alongside a motion for summary judgment. *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 958 (11th Cir. 2025); *Baxter v. Santiago-Miranda*, 121 F.4th 873, 882 n.4 (11th Cir. 2024); *DuBay v. King*, 844 Fed. Appx. 257, 261 (11th Cir. 2021).

To be blunt, GEICO's insistence otherwise is a distraction from what matters: While the Magistrate was not bound by the expert's opinion, it erred by failing to give *any* weight to Kammer's testimony and by disregarding the expert evidence as proof that reasonable individuals could differ on their view of the totality of the circumstances. DE:173; DE:180. Because this Court is "unable to evaluate whether

20

the expert testimony raised a genuine dispute of material fact because the district court omitted from its opinion any reference whatsoever to that testimony," the Court should have the district court "accordingly evaluate the testimony under the usual standards for admissibility, *see* Fed. R. Evid. 702, and decide what relevance, if any, the testimony has to the creation of a genuine dispute of material fact. The [district] court should not simply ignore the testimony or deem the expert not credible." *Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 931 (11th Cir. 2016).

**D.  The District Court Erred by Comparing the Totality of These Circumstances to Inapposite Opinions While Ignoring Newer, More Similar, Binding Precedent.**

GEICO maintains fidelity to the Court's unpublished opinions in *Valle v. State Farm Mut. Auto. Ins. Co*, 394 Fed. Appx. 555 (11th Cir. 2010), *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 Fed. Appx. 905 (11th Cir. 2020), and its 2015 opinion, *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1355 (11th Cir. 2015).  AB at 18-25. Some of those cases bear similarities to some of the circumstances presented here, but none embody the *totality* of these circumstances.  When viewed in the light most favorable to the Bennars, these facts demonstrate a situation where the insurer conducted an objectively unreasonable 69-day coverage investigation that its own counsel resolved in a single day using existing precedent, failed to act with the urgency required when facing a catastrophic "ticking time bomb" injury claim, and imposed unnecessary procedural delays through a global settlement conference that served no substantive purpose—all while GEICO's insured faced mounting

21

exposure to an inevitable excess judgment. Neither *Valle*, *Montanez*, nor *Mesa* features this amalgamation of circumstances.

The Magistrate and the District Court erred by not considering other precedent, published or unpublished, and relying on these unpublished opinions without demonstrating why they were "persuasive" as required by the Court's rules.

## CONCLUSION

Appellants respectfully request that the Court reverse the District Court's Order Adopting the Magistrate's Report and Recommendation which granted summary judgment in favor of GEICO, and remand for further proceedings.

Respectfully submitted,

Stephen A. Marino, Jr.
  Florida Bar No. 79170
Michal Meiler
  Florida Bar No. 86522
VER PLOEG & MARINO, P.A.
100 S.E. Second St., Ste. 3300
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com

Elliot B. Kula
  Florida Bar No. 003794
William D. Mueller
  Florida Bar No. 120124
KULA & ASSOCIATES, P.A.
12000 Biscayne Blvd., Ste. 221
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com
william@kulalegal.com

By: /s/ Stephen A. Marino, Jr.
    Stephen A. Marino, Jr.

By: /s/ Elliot B. Kula
    Elliot B. Kula

By: /s/ Michal Meiler
    Michal Meiler

By: /s/ William D. Mueller
    William D. Mueller

*Co-Counsel for Appellants*

22

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses Times New Roman 14-point typeface and contains  5,763  words.

/s/ Stephen A. Marino, Jr.
Stephen A. Marino, Jr.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Stephen A. Marino, Jr
Stephen A. Marino, Jr.

23